## S94A0111. WILSON v. THE STATE.
(444 SE2d 306)

FLETCHER, Justice.

Robert Foster Wilson was convicted of malice murder, robbery, and kidnapping with bodily injury in the stabbing death of Tracie Deaton.[1] He was sentenced to life imprisonment for the malice murder conviction, 20 years for the robbery conviction, and life imprisonment for the kidnapping conviction. The robbery and kidnapping sentences are to run concurrent with each other but consecutive to the sentence for malice murder. He appeals and we affirm.

1. The evidence when viewed in a light most favorable to the verdict shows that during the early morning hours of July 16, 1990, Wilson robbed the White Columns Inn in Thomson, Georgia, forcibly dragged the night clerk into the kitchen and stabbed her to death with a butcher knife. A vehicle with a description matching Wilson's was placed at the scene between the hour the clerk was last seen alive and the time her body was found, and fingerprints identified as Wilson's were discovered at the scene.

After the discovery of the homicide, law enforcement officers interviewed Wilson on four occasions: November 20, 1990, November 21, 1990, December 13, 1990 and July 16, 1991. Wilson was advised of

---

[1] The homicide occurred on the nights of July 16-17, 1990. Wilson was indicted on August 27, 1991, tried on July 19 through July 23, 1993, and sentenced on July 23, 1993. He filed a notice of appeal on August 6, 1993 and the case was orally argued on January 10, 1994.

his *Miranda* rights on each of these occasions. The December 13, 1990 interview was terminated when Wilson invoked his right to counsel. Subsequent to that interview, Wilson was incarcerated for an unrelated offense at Rogers Correctional Institution where the fourth interview took place on the one-year anniversary of the murder. Law enforcement officers initiated this interview which Wilson terminated by indicating only that he did not want to talk to investigators any more.

Within days of the fourth interview, Wilson was transferred to the maximum security facility (Georgia State Prison) at Reidsville, Georgia and placed in a cell next to Thomas Alton Brown. Brown was asked by prison authorities to listen for Wilson to make incriminating statements. Brown engaged Wilson in several conversations over the next week to ten days during which Wilson made several incriminating admissions.

Under the standard of review found in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was sufficient for a rational trier of fact to find Wilson guilty beyond a reasonable doubt of each of the offenses for which he was convicted.

2. Wilson contends that the court erred when it refused to suppress his inculpatory statements made to Brown because the state's use of an inmate to "interrogate" him after his request for the assistance of counsel violated his right to counsel under the fifth amendment to the United States Constitution and the corresponding right in Art. I, Sec. I, Par. XVI of the Constitution of the State of Georgia.[2]

In *Escobedo v. Illinois*, 378 U. S. 478, 486 (84 SC 1758, 12 LE2d 977) (1964), the Supreme Court held that an accused has a critical need for legal counsel when being interrogated concerning a crime. The court noted that although such interrogation occurs before indictment, the purpose of the interrogation is to get the accused to confess guilt despite the constitutional right not to do so. Id. at 485. Thus, the court held that an accused has the right to counsel if requested during such an interrogation.

Although *Escobedo* is based on the accused's Sixth Amendment right to counsel, later opinions recognized that the right to counsel during in-custody interrogations prior to the initiation of adversary proceedings stems from the Fifth Amendment right against self-incrimination. See *Kirby v. Illinois*, 406 U. S. 682, 689 (92 SC 1877, 32 LE2d 411) (1972). The basic reason for this treatment is that in pro-

---

[2] Wilson does not contend that his Fifth Amendment rights were violated because Brown did not provide *Miranda* warnings. It is now clearly established that a fellow inmate or an officer posing as a fellow inmate need not give *Miranda* warnings before asking questions that may elicit an incriminating response. *Illinois v. Perkins*, 496 U. S. 292, 300 (110 SC 2394, 110 LE2d 243) (1990).

tecting the right of an accused to not be compelled to bear witness against himself, the unsophisticated layman needs the advice of counsel in order to understand how to exercise the protections provided by the Constitution. See, e.g., *Escobedo*, 378 U. S. at 486 (noting that the accused was unaware of the legal effect of his statements).

In *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), the Supreme Court established prophylactic rights designed to protect a suspect's constitutional rights and to counteract the "inherently compelling pressures" of custodial interrogation. In this regard, the court held that "[i]f the individual [being questioned] states that he wants an attorney, the interrogation must cease until an attorney is present." Id. at 474. This rule is based on the court's perception

"that the lawyer occupies a critical position in our legal system because of his unique ability to protect the Fifth Amendment rights of a client undergoing custodial interrogation. Because of this special ability of the lawyer to help the client preserve his Fifth Amendment rights once the client becomes enmeshed in the adversary process, the . . . 'right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system' established by the Court. [384 U. S.] at 469."

*Arizona v. Roberson*, 486 U. S. 675, 682, n. 4 (108 SC 2093, 100 LE2d 704) (1988), quoting *Fare v. Michael C.*, 442 U. S. 707, 719 (99 SC 2560, 61 LE2d 197) (1979). Accordingly, once a suspect invokes his Fifth Amendment right to counsel, not only must the interrogation cease, but the police cannot reinterrogate or otherwise initiate contact designed to produce incriminating statements. *Edwards v. Arizona*, 451 U. S. 477, 484-485 (101 SC 1880, 68 LE2d 378) (1981).

Despite the breadth of a suspect's Fifth Amendment right to counsel, *Miranda* did not hold that these rights could not be waived. Rather, the Supreme Court has recognized that statements elicited during a custodial interrogation are admissible if the prosecution establishes that the suspect knowingly and intelligently waived his privilege against self-incrimination or his right to counsel. *Miranda*, 384 U. S. at 475; see *Edwards*, 451 U. S. 477. A similar exception to the requirement that all police interrogation cease after the right to counsel is invoked arises where there is a break in custody. Because of the absence or dissipation of coercion once a suspect is released from custody, subsequent confessions obtained from even police initiated interrogation are admissible without violating the suspect's Fifth Amendment rights if there has been an intervening break in custody. *State v. Bymes*, 258 Ga. 813, 814 (375 SE2d 41) (1989); *Dunkins v. Thigpen*, 854 F2d 394, 397 (11th Cir. 1988); see also *McNeil v. Wis-*

*consin*, 501 U. S. 171 (111 SC 2204, 115 LE2d 158) (1991) ("If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary . . .").

In the instant case, there was a seven-month break in custody between the December 13, 1990 interrogation when Wilson invoked his right to counsel and the time Wilson made the incriminating statements to Brown, and Wilson did not reassert his right to counsel at the July 16, 1991 interrogation. This break in custody precludes Wilson's claim that his incriminating admissions were obtained in violation of his Fifth Amendment right to counsel and the court properly refused to suppress such statements on this ground.[3] *Bymes*, 258 Ga. at 814.

3. Wilson contends that even if his incriminating statements are not inadmissible as violative of his Fifth Amendment rights, they are nevertheless inadmissible as violative of his right to due process. Relying upon the due process clause of the Fourteenth Amendment, the Supreme Court has held that

> certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned . . . .

*Miller v. Fenton*, 474 U. S. 104, 109 (106 SC 445, 88 LE2d 405) (1985). However, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U. S. 157, 167 (107 SC 515, 93 LE2d 473) (1986). In the instant case, Brown's activity in eliciting the incriminating admissions from Wilson was not so coercive as to violate the due process clause. Brown testified that he took part in express questioning of Wilson in an effort to elicit an incriminating response and that he concocted an elaborate story about himself in order to gain Wilson's confidence. There is no evidence, however, that Brown used coercive or threatening devices in interrogating Wilson and the coercive atmosphere of direct police interrogation is lacking. See *Illinois v. Perkins*, 496 U. S. 292, 296 (110 SC 2394, 110 LE2d 243) (1990). The court correctly admitted Wilson's incriminating statements into evidence.

4. Wilson asserts that both the robbery by force charge and the kidnapping with bodily harm charge merged with his murder conviction.

---

[3] As in *Bymes*, there is no evidence here that Wilson's release from custody was a ploy to seek a waiver of his Fifth Amendment rights.

(a) Robbery is not an included offense of malice murder as a matter of law. Under the evidence, Wilson was the sole perpetrator of both offenses and the separately committed robbery was not an included offense of the separately committed malice murder as a matter of fact. Compare *Burke v. State*, 234 Ga. 512, 515 (216 SE2d 812) (1975). Accordingly, the robbery conviction did not merge into the malice murder conviction and the trial court did not err in sentencing Wilson for both offenses.

(b) Kidnapping with bodily injury is not an included offense of malice murder as a matter of law. *Pryor v. State*, 238 Ga. 698, 699 (234 SE2d 918) (1977). Under the evidence, the victim was kidnapped and injured before she was stabbed to death and the separately committed kidnapping was not an included offense of the separately committed malice murder as a matter of fact. *Potts v. State*, 241 Ga. 67, 78-79 (243 SE2d 510) (1978). Accordingly, the conviction for kidnapping with bodily injury did not merge into the malice murder conviction and the trial court did not err in sentencing Wilson for both offenses.

*Judgment affirmed. All the Justices concur, except Carley, J., who concurs specially; Hunt, C. J., and Hunstein, J., concur in the judgment only.*

CARLEY, Justice, concurring specially.

I concur fully in the affirmance of appellant's convictions. However, my analysis of the admissibility of the incriminating admissions made by appellant to his fellow inmate Brown differs somewhat from that of the majority.

In Division 2, the majority holds that appellant's incriminating admissions to Brown are not inadmissible under *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981) because there was a "break" in custody. I agree.

> [B]ecause there was a [7]-month break in custody between the initial interrogation [of December 13, 1990, wherein appellant clearly invoked his right to counsel] and [appellant's conversations with Brown after July 16, 1991], and because there is no indication [appellant's] release from custody [on December 13, 1990] was a mere ploy in order to seek another waiver, his Fifth and Fourteenth Amendment rights were not violated under *Edwards v. Arizona*.

*State v. Bymes*, 258 Ga. 813, 814 (375 SE2d 41) (1989).

However, it should *also* be recognized that, even if this break in custody were not dispositive, appellant's subsequent incriminating admissions to Brown *still* would not be inadmissible under *Edwards*

unless they were the product of "custodial interrogation."

> The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any *custodial interrogation. Absent such interrogation,* there would [be] *no* infringement of the right [to counsel] that [a defendant has previously] invoked and there would [be] *no* occasion to determine whether there had been a valid waiver [of that previously asserted right].

(Emphasis supplied.) *Edwards v. Arizona,* supra at 485-486 (II).

"Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody . . . ." *Miranda v. Arizona,* 384 U. S. 436, 444 (86 SC 1602, 16 LE2d 694) (1966). Appellant was in custody at the time that his incriminating admissions were made. However, he was not in the custody of Brown, who was neither a law enforcement officer nor an agent of the State. *Burgan v. State,* 258 Ga. 512, 515 (5) (371 SE2d 854) (1988). Appellant

> had no reason to feel that [Brown] had any legal authority to force him to answer questions or that [Brown] could affect [appellant's] future treatment. [Appellant] viewed [Brown] as an equal and showed no hint of being intimidated by the atmosphere of the jail. In recounting the details of the [instant crimes, appellant] was motivated solely by the desire to impress his fellow inmates. He spoke at his own peril.

*Illinois v. Perkins,* 496 U. S. 292, 298 (II) (110 SC 2394, 110 LE2d 243) (1990). Indeed, even if Brown had been an undercover officer posing as an inmate, appellant's incriminating admissions still would not be the inadmissible product of "custodial interrogation."

> The essential ingredients of a "police-dominated atmosphere" and compulsion are not present when an incarcerated person speaks freely to someone [whom] he believes to be a fellow inmate.

*Illinois v. Perkins,* supra at 296 (II). Since "custodial interrogation" is "absent" in the instant case, there was "no infringement" of appellant's previously asserted right to counsel and there is "no occasion" to determine whether appellant made a valid waiver of that previously asserted right. *Edwards v. Arizona,* supra at 486 (II).

In Division 3, the majority holds that the incriminating admissions to Brown are not inadmissible as violative of appellant's due process rights because "Brown's activity in eliciting the incriminating

admissions from [appellant] was not so coercive as to violate the due process clause." I agree. "When a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking. [Cit.]" *Illinois v. Perkins,* supra at 296 (II).

However, it should *also* be recognized that "coercive *police activity* is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." (Emphasis supplied.) *Colorado v. Connelly,* 479 U. S. 157, 167 (II) (107 SC 515, 93 LE2d 473) (1986). In the instant case, there was no "police activity" whatsoever involved in eliciting the incriminating admissions from appellant. Those admissions were elicited by Brown, not by a law enforcement officer or an agent for the State. *Burgan v. State,* supra at 515 (5). "The most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause. [Cits.]" *Colorado v. Connelly,* supra at 166 (II).

DECIDED JUNE 13, 1994 —
RECONSIDERATION DENIED JUNE 24, 1994.

*Groover & Childs, Denmark Groover, Jr.,* for appellant.

*Dennis C. Sanders, District Attorney, Robert C. Dunn III, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Peggy R. Katz, Assistant Attorney General,* for appellee.