## S97A0332. THE STATE v. RITTER.
### (485 SE2d 492)

HUNSTEIN, Justice.

The State appeals from the trial court's ruling excluding certain statements made by Hughey Edward Ritter to the police.[1] Ritter is charged with murder and armed robbery; the State has filed notice of its intention to seek the death penalty. In addressing this appeal we bear in mind that a trial court's determination as to the voluntariness of a confession after a suppression hearing must be upheld by the appellate court unless the decision is clearly erroneous. *Berry v. State,* 254 Ga. 101, 104 (326 SE2d 748) (1985).

The trial court found that when the police responded to a crime scene in Forest Park on December 5, 1995, they discovered Jack Barnhill lying wounded in a van (he had been struck in the head with a stick) and Ritter sitting on the van's step. Ritter was arrested at the scene and, after being read his *Miranda* rights,[2] told the police he understood his rights and did not want to say anything. As he was driven to the police station, Ritter inquired after the victim but the officer transporting him, knowing of Ritter's invocation of his rights, did not respond or speak to Ritter. Ritter also inquired after the victim while he was being booked, at which time he was asked only routine booking questions. The trial court found that Detective Cox, the officer in charge of the investigation, was informed of Ritter's invocation of his right to remain silent and also about Ritter's repeated inquiries into the victim's well-being.

The next day, December 6, Detective Cox had Ritter moved from his jail cell to an "interview room." Ritter had not requested to speak with the police; the questioning was initiated and orchestrated by the police. The evidence supports the trial court's finding that Detective Cox knew Jack Barnhill had died as a result of the wounds he had received and that Cox had obtained a warrant for the arrest of Ritter

---

[1] The State's appeal was authorized under OCGA § 5-7-1 (a) (4). This Court earlier denied Ritter's motion to dismiss the appeal made on the basis that Unified Appeal Procedure proceedings, OCGA § 17-10-35 et seq., were pending in the trial court.

[2] *Miranda v. Arizona,* 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

on charges of murder and armed robbery before the December 6 interview. Detective Cox testified at the hearing that he informed Ritter prior to the interview that Ritter was charged with aggravated assault, but did not tell him of the murder or armed robbery charges. Cox began an almost hour-long interrogation by volunteering that Barnhill was "awake now and conscious and all that good stuff. I talked to him yesterday after I got him up." In response to Ritter's inquiry whether Barnhill was "okay," Cox responded "yeah, I think he's going to be okay. He's going to have a bad headache now for a while."[3] Cox testified at the hearing that he was afraid that if he told Ritter the truth, i.e., that the victim had died, Ritter would not talk to the police or would invoke his right to remain silent. Cox further testified that he read Ritter his *Miranda* rights again; asked Ritter if he wanted to talk; and after Ritter responded "I do not know," immediately started questioning Ritter. The evidence supports the trial court's finding that Ritter stated at the beginning of the interrogation that he thought he needed an attorney; that Ritter repeated that statement later in the questioning; and that Ritter asked once at the end of the interrogation if he needed an attorney.[4]

The trial court excluded Ritter's December 6 statement to the police on several bases: that Ritter's statement was not freely and voluntarily made, that Ritter had invoked his right to an attorney during the interview, and that Ritter had never waived his earlier invocation of his right to remain silent. Because we agree with the trial court that Ritter's December 6 statement was inadmissible because it was not freely and voluntarily made, we do not address the other bases for the trial court's ruling.

1. Under Georgia law, only voluntary incriminating statements are admissible against the accused at trial. OCGA § 24-3-50. When not made freely and voluntarily, a confession is presumed to be legally false and cannot be the underlying basis of a conviction. *McKennon v. State*, 63 Ga. App. 466 (11 SE2d 416) (1940). To make a confession admissible, it must have been made voluntarily, i.e., "without being induced by another by the slightest hope of benefit or remotest fear of injury." OCGA § 24-3-50. Accord *Malloy v. Hogan*, 378 U. S. 1, 7 (84 SC 1489, 12 LE2d 653) (1964). A reward of lighter punishment is generally the "hope of benefit" to which OCGA § 24-3-50 refers. *Caffo v. State*, 247 Ga. 751, 757 (279 SE2d 678) (1981). The

---

[3] At the hearing Detective Cox referred to his use of these untruthful statements as an "investigative technique."

[4] The videotape reveals that less than three minutes into the questioning Ritter stated "I think I need an attorney." Twenty minutes into the interview Ritter responded to a question by saying "I don't know. That's what I'm saying. That's why I think I need a lawyer because I don't know nothing." Near the conclusion of the interview Ritter asked, "Do I need a lawyer?"

State bears the burden of demonstrating the voluntariness of a confession by a preponderance of the evidence. *Bright v. State*, 265 Ga. 265, 280 (5) (b) (455 SE2d 37) (1995).

The law is well established that use of trickery and deceit to obtain a confession does not render it inadmissible, so long as the means employed are not calculated to procure an untrue statement. *Moore v. State*, 230 Ga. 839, 840 (1) (199 SE2d 243) (1973). This principle, however, addresses the behavior of the interrogator and the intent with which deceit or trickery is employed; hence, this principle cannot be allowed to supersede OCGA § 24-3-50 and its focus on the party confessing and the effect of any deceit upon the voluntariness of a confession. Thus, while deceit may not on its own render a statement inadmissible (where not calculated to procure an untrue statement), we hold that in looking to the totality of the circumstances, see *Reinhardt v. State*, 263 Ga. 113, 115 (3) (b) (428 SE2d 333) (1993), the employment of deceit may result in the inadmissibility of a statement in those situations where the particular deception used, by constituting a "slightest hope of benefit or remotest fear of injury" under OCGA § 24-3-50, has induced a party to confess, thereby rendering the confession involuntary. Hence, police "investigative techniques" such as artifice, tricks or deception may be utilized in interrogating individuals only where "the means used to obtain [confessions] [does] not prevent them from being free and voluntary." *Moore v. State*, supra at 840 (1). See *Grades v. Boles*, 398 F2d 409 (4th Cir. 1968) (confession suppressed where accused told he would be tried for only one felony and that past record of convictions would not be pressed against him when in fact prosecutor had no intention of following through on these promises; perspective from which statements made to accused must be viewed is that of the defendant, not the state); *Mitchell v. State*, 508 S2d 1196 (Ala. Crim. App. 1986) (confession suppressed where accused told victim died of heart attack, constituting implied promise that accused could not be charged with murder if he gave statement).

In the case at bar, Detective Cox's representation regarding the victim's state of health constituted an implied promise that Ritter could not be charged with murder if he gave a statement to the police, but could only be charged with aggravated assault on a victim who was represented to be not only still alive but actively recovering and suffering from nothing more than a bad headache. Given Detective Cox's testimony that the representations were made to induce Ritter to speak based on the detective's assessment that Ritter would invoke his right to remain silent if he knew the full extent of the charges against him, the evidence supports the conclusion that Ritter was induced to talk to the police under the belief that he was incriminating himself only in regard to an aggravated assault charge and

thus his confession was based upon the hope that he faced a lighter possible criminal penalty than he actually was facing.[5]

It thus appears from the evidence adduced that although Detective Cox's deception may not have been intended to procure an untrue statement, the deception was intended and indeed did induce Ritter to confess in the hope of receiving a lighter punishment, a confession that would not have been made had Ritter known he faced a possible death sentence. These facts distinguish this case from *Cooper v. State*, 256 Ga. 234 (2) (347 SE2d 553) (1986), wherein police officers also made misrepresentations regarding the health of the victim but the accused did not assert that he was induced thereby into confessing and the trial court found his confession to have been made freely and voluntarily. Applying the "clearly erroneous" standard to our review of the trial court's ruling, we cannot conclude under the totality of the circumstances here that the trial court clearly erred when it ruled that the State failed to prove by a preponderance of the evidence that Ritter's confession was made without the slightest hope of benefit. OCGA § 24-3-50; *State v. Barber*, 197 Ga. App. 353 (398 SE2d 419) (1990). See generally *Gober v. State*, 264 Ga. 226 (2) (b) (443 SE2d 616) (1994). Because the State did not establish a prima facie case showing the voluntariness of Ritter's December 6 statement, the trial court properly excluded it from evidence.

2. We find no error in the trial court's ruling that Ritter's December 6 statement, because it was not made voluntarily, cannot be admitted into evidence for purposes of impeachment. *Mincey v. Arizona*, 437 U. S. 385, 398 (98 SC 2408, 57 LE2d 290) (1978); *Jones v. State*, 243 Ga. 820 (6) (256 SE2d 907) (1979); *Green v. State*, 154 Ga. App. 295 (267 SE2d 898) (1980). See also Daniel, Georgia Handbook on Criminal Evidence (1997 ed.), § 6-24.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 9, 1997.

*Robert E. Keller, District Attorney, David B. Hornsby, Assistant District Attorney,* for appellant.

*Lee Sexton & Associates, Lee Sexton, Montgomery & McDonald, Colin E. McDonald,* for appellee.

---

[5] Aggravated assault carries a maximum penalty of 20 years imprisonment. OCGA § 16-5-21 (b). The maximum penalty for murder is death. OCGA § 16-5-1 (d).