## S00A0769. THE STATE v. RAY.
### (531 SE2d 705)

HUNSTEIN, Justice.

The State appeals from the trial court's ruling excluding the confession Scott Brandon Ray made to police on July 8, 1998 at the Port Wentworth Police Department. Ray is charged in a multi-count indictment for crimes arising out of the shotgun murder and armed robbery of Paulajayne Sprague at the Savannah Truck Wash. The State has filed its notice of its intention to seek the death penalty. Finding no clear error in the trial court's determination that Ray's confession was not voluntary, we affirm.

1. The State's appeal was proper under OCGA § 5-7-1 (a) (4). See *State v. Henderson*, 271 Ga. 264 (517 SE2d 61) (1999); *State v. Ritter*, 268 Ga. 108, fn. 1 (485 SE2d 492) (1997). This Court earlier denied Ray's motion to dismiss the appeal made on the basis that Unified Appeal Procedure proceedings, OCGA § 17-10-35 et seq., were pending in the trial court.

2. In addressing this appeal, we bear in mind that in a ruling on a motion to suppress, a trial court's findings as to disputed facts will be reviewed under a clearly erroneous standard and that the trial court's application of the law to undisputed facts is subject to de novo appellate review. *Vansant v. State*, 264 Ga. 319 (1) (443 SE2d 474) (1994). The trial court found that Ray's confession was inadmissible because the detectives questioning him raised the issue of punishment and impliedly promised Ray that he could receive a life sentence rather than the death penalty if he cooperated and confessed to the crime.

> Under Georgia law, only voluntary incriminating statements are admissible against the accused at trial. OCGA § 24-3-50. When not made freely and voluntarily, a confession is presumed to be legally false and cannot be the underlying basis of a conviction. [Cit.] To make a confession admissible, it must have been made voluntarily, i.e., "without being induced by another by the slightest hope of benefit or remotest fear of injury." [Cits.]

*State v. Ritter*, supra, 268 Ga. at 109 (1). The "slightest hope of benefit" in OCGA § 24-3-50 means the hope of a lighter sentence. *Arline v. State*, 264 Ga. 843 (2) (452 SE2d 115) (1995).

The State bears the burden of demonstrating the voluntariness of a confession by a preponderance of the evidence. *State v. Ritter*, supra, 268 Ga. at 110 (1). The record in this case reveals that Paulajayne Sprague died from a shotgun blast to her face during an armed robbery at the Savannah Truck Wash, where Ray was an

employee. Ray was questioned at work by police. The police recovered a videotape from the truck wash which showed the crimes were committed by two masked men, one black and one white, armed respectively with a shotgun and a handgun. Another truck wash videotape made earlier that same day showed Ray, a Caucasian-American male, talking to Johnson, an African-American male, who was a former truck wash employee. Prior to their interrogation of Ray on July 8, police recovered a shotgun, which police believed to be the murder weapon, from a relative of Johnson. Police also recovered Ray's brother-in-law's nine millimeter Larson handgun, to which Ray allegedly had access, which looked identical to the weapon seen on the crime scene videotape and had dents in its handle which matched the indentations inflicted to force open the cash drawer at the truck wash during the robbery. Additionally, police had obtained items of Ray's clothing, including a pair of slacks stained with a substance an officer stated looked like blood; had statements from Ray's family contradicting Ray's previous statement that he was present in his home at the time of the murder; and had witnesses to Ray's threat to kill the victim over a misunderstanding with Ray's pay check.

Ray, a seventeen-year-old who had just completed the eleventh grade, was interviewed by two veteran police detectives on July 8, 1998 at the Port Wentworth Police Department.[1] During the course of the interrogation, the officers repeatedly indicated to Ray that they believed he was one of the two men involved in the crimes.[2] At one point the officers posited a "hypothetical" to Ray indicating that when a murder is committed by two individuals, the party willing to testify against the other would have the possibility of not facing the death penalty;[3] the officers also intimated that Ray could save himself from execution by telling the officers truthfully about the crimes.[4] Approximately two hours into the interview, the officer told

---

[1] An officer had asked Ray at his workplace if he would speak to police; Ray agreed and the officer drove him to the police station. The officer testified that he "had been instructed not to" place Ray under arrest.

[2] The officer stated to Ray that "we told you [previously] we were going to get who did this. And I'm telling you now that we will get the other one. . . . A couple of days from now, we'll get the other one. He's going to be sitting there with someone else telling us what you did. . . ."

[3] The officer asked Ray, "If you're looking at getting your ass strapped into a wooden chair and 2,000 volts run through you, make you play Uncle Fester and light up the 60 watt bulb put in your mouth or the possibility of not facing the death penalty in exchange for your testimony against the other guy who was inside the building with you, do you think somebody would do that?"

[4] In one long exchange, the officer told Ray he knew the correct answers to the questions he was asking Ray, that Ray was not telling the truth and was playing games with the officer, and told Ray that "the only thing that's in a sling is your ass. . . . And I don't care if you save it or not," because if Ray continued lying, "all that's going to do is put you in Jackson a whole lot quicker," explaining that Jackson is "where the electric chair sits."

Ray "[g]ive us the facts and we will become easy to get along with you and it might possibly. . . ." Ray interrupted, to ask, "what would I get if I give the other guy up?" The officer replied, "Possibly — here's what I can tell you. Years of freedom." Ray, who had been reduced to tears by this time, shortly thereafter told police that the "other guy" was Jason Johnson. It was at this point that the officer first read Ray his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), and obtained a waiver of those rights and a statement from Ray confessing his participation in the crimes.

Our review of the interrogation fails to support the State's claim that the trial court distorted the effect of a few isolated comments in order to conclude that the officers held out a hope of benefit to Ray. Rather, looking to the totality of the circumstances, *State v. Ritter*, supra, 268 Ga. at 110, we find the record supports the trial court's determination that the officers induced Ray into confessing by holding out a hope of benefit in the form of a lesser punishment. We reject the State's contention that the promise of "years of freedom" by the officer was a slip of the tongue since the record reveals that the promise was not a mere verbal inaccuracy, compare *LeMay v. State*, 265 Ga. 73 (3) (453 SE2d 737) (1995), but rather was a deliberate investigative technique employed by the officer to obtain a confession from Ray. Accordingly, because the trial court did not clearly err when it ruled that the State failed to prove by a preponderance of the evidence that Ray's confession was made without the slightest hope of benefit, we affirm the exclusion of Ray's confession. See *State v. Ritter*, supra, 268 Ga. at 111 (1).

3. Contrary to the State's persistent contention, the trial court's order clearly applies solely to the confession made by Ray to police on July 8, 1998 at the Port Wentworth Police Department. We do not interpret the trial court's ruling as applying to the routine booking questions asked of Ray, see generally *Franks v. State*, 268 Ga. 238, 239-240 (486 SE2d 594) (1997), or to Ray's pre-confession statements prior to the improper language holding out a hope of benefit. See *Burley v. State*, 190 Ga. App. 75 (3) (b) (378 SE2d 328) (1989) (confession suppressed on improper "hope of benefits" basis does not relate back to influence anything said by accused prior to that time).[5]

*Judgment affirmed. All the Justices concur.*

---

[5] Although the trial court at the conclusion of the hearing on the suppression motion stated it was inclined to exclude the initial portion of Ray's statement because the officers failed to inform Ray of his rights under *Miranda v. Arizona*, supra, no such ruling was contained in the order from which the State appeals. Thus, we do not address the State's arguments regarding the alleged noncustodial nature of Ray's initial interrogation and intimate no opinion on this issue.

DECIDED JUNE 5, 2000.

*Spencer Lawton, Jr., District Attorney, Ann M. Elmore, Assistant District Attorney, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Allison G. Vrolijk, Assistant Attorney General*, for appellant.

*Jackson & Schiavone, Michael G. Schiavone, William A. Dowell*, for appellee.