## A01A0179. THE STATE v. TODD.
(549 SE2d 821)

JOHNSON, Presiding Judge.

Michael Todd was indicted for rape, two counts of attempted aggravated sodomy, and false imprisonment of his wife. Todd moved the trial court to suppress his videotaped statement on the ground that police officers had improperly given him the hope of benefit and thereby induced him into giving the statement. The trial court

---

granted the motion. The state appeals from the trial court's suppression order. Because the trial court erred in concluding that the officers had induced Todd's statement by holding out some hope of benefit, we reverse the trial court's suppression order.

Police officers arrested Todd at his and his wife's house, where Detective J. L. Bright informed Todd of his *Miranda*[1] rights. A uniformed officer took Todd to police headquarters, while Detective Bright and Investigator Michael Bean remained at the house. Todd's wife joined them there and consented to a search of the house.

She took Bright into the bedroom where the rape allegedly had occurred and showed him the towel that she said she had used to wipe Todd's semen off her face. She pointed out clothing which she said Todd had ripped from her during the attack. She also located a roll of film that contained photographs of her nude and crying, which she said Todd had taken immediately after the rape.

In the meantime, the uniformed officer arrived with Todd at police headquarters and placed him in an interview room which contained a videocamera. Eventually, Detective Bright and Investigator Bean entered the room. Bright removed Todd's handcuffs and told him that the *Miranda* rights read to him at the house still applied.

Todd asked if he was under arrest and going to jail no matter what happened. Detective Bright told Todd that he was under arrest and was going to jail. Todd then asked if there was anything he could say or do. And Bright replied: "I won't say that. A judge has issued a warrant, but if after we talk to you, we believe that probable cause doesn't exist, we are certainly not going to keep you arrested." Todd then told Bright and Bean what occurred between him and his wife.

Based on this conversation, the trial court suppressed Todd's videotaped statement. The trial court found that Detective Bright's replies to Todd's questions offered Todd the hope that he would be released if he discussed the matter with the police. In reviewing the trial court's decision to suppress the statement, we must accept the court's findings of fact unless they are clearly erroneous, but the court's application of the law to those facts is subject to a de novo review.[2] Here, the trial court's application of the law to the facts was erroneous.

To be admissible, a statement must be made voluntarily, without being induced by the slightest hope of benefit.[3] The "slightest hope of benefit" means the hope of a lighter sentence.[4] In the instant case, the police officers did not provide Todd with any hope that he would

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[2] *State v. Ray*, 272 Ga. 450 (2) (531 SE2d 705) (2000).

[3] OCGA § 24-3-50.

[4] *Ray*, supra.

receive a lighter sentence by speaking to them. In fact, there was no discussion of the length of any sentence at all.

Rather, Detective Bright's responses to Todd's unsolicited questions were mere truisms. Bright first correctly told Todd that he was under arrest. And then he simply made a correct statement of the law, i.e., if there was no probable cause, then the officers would have no basis for keeping Todd under arrest.[5] This sort of mere truism, mere explanations of Todd's arrest and of the law, does not constitute an improper offer of some hope of benefit.[6]

Because the officers did not act improperly — did not induce Todd into giving his statement — the trial court's ruling to the contrary is erroneous as a matter of law. The trial court's order suppressing Todd's statement is thus reversed.

*Judgment reversed. Pope, P. J., Smith, P. J., Barnes and Ellington, JJ., concur. Ruffin and Phipps, JJ., dissent.*

RUFFIN, Judge, dissenting.

If I were sitting as the trial judge in this case, I may have concluded that the officers did not induce Todd's confession with a slight hope of benefit. As an appellate court judge, however, I must defer to the trial court's findings unless they are clearly erroneous.[7] This is because the trial court judge had the opportunity to observe, first-hand, the testimony of officers Bright and Bean, to judge their credibility, to weigh the evidence based on what she observed, and to determine, based on a totality of the circumstances, whether the state met its burden of proving by a preponderance of the evidence that Todd's confession was voluntary and made without even the slightest hope of benefit.[8] Paying proper deference to the trial court's findings in this case, I believe they were not clearly erroneous and therefore dissent from the majority opinion.

I cannot ignore the circumstances under which Todd was "informed" of his *Miranda*[9] rights. At 3:30 a.m., Bright and Bean, armed with the warrant and accompanied by additional uniformed officers, went to Todd's house to arrest him. According to Bright, Todd "came to the door typical of someone who had been awakened from their bed at 3:30 in the morning." The investigators immedi-

---

[5] See OCGA § 17-4-20.

[6] See *Davis v. State*, 245 Ga. App. 508, 509 (538 SE2d 159) (2000) (officer's statement to defendant that he was in trouble was a mere truism, and statement regarding possible 20-year sentence simply informed defendant of potential legal consequences). See also *Copeland v. State*, 162 Ga. App. 398, 400 (3) (291 SE2d 560) (1982) (officer's statement to defendant that his wife could also be charged with a crime was a mere truism).

[7] *Gulley v. State*, 271 Ga. 337, 339-340 (2) (519 SE2d 655) (1999).

[8] See id.

[9] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

ately arrested Todd, who had in fact been asleep, and handcuffed him, and while he was getting dressed, Detective Bright read the *Miranda* rights to Todd. Under these circumstances, it is certainly questionable whether Todd, who was likely sleepyheaded and overwhelmed by the unexpected show of force, fully comprehended the constitutional rights being read to him as he dressed to go to jail.

I also cannot ignore the circumstances immediately preceding Todd's confession. When the uniformed officer arrived with Todd at police headquarters, he placed Todd in an interview room which was approximately six by eight feet and contained a table and three chairs. At some point, Bright arrived and joined Todd. Although a videocamera was recording their encounter, Todd was never informed about the camera or that his statements were being recorded. The videotape reveals that when Detective Bright entered the room, he removed Todd's handcuffs and stated: "Mike, you remember when I read you your rights at the house?" Todd responded, "yes," and Bright told him, "all that stuff still applies." After Bean joined Bright and Todd in the room, the following discussion took place between Bright and Todd. Todd asked: "so, pretty much I'm arrested; I'm going to jail no matter what," and Bright interrupted stating, "yeah, good point. Yes you are." Todd then began asking: "there's nothing I can say or do that," and Bright again interrupted stating, "well, I won't say that. A judge has issued a warrant. If after we talk to you we believe that probable cause doesn't exist, we're certainly not going to keep you arrested." Immediately thereafter, Todd told Bright and Bean what occurred.

Todd was obviously frightened by his predicament. After being arrested in the middle of the night, he found himself sitting in a small room at police headquarters with two of the officers who conducted the arrest. As found by the trial court, Todd clearly wanted to know what he could do to be released. Bright essentially responded that if Todd confessed to what actually happened, and based on that confession Bright believed that no probable cause existed, then Todd would "certainly" be released following the statement. Bright's response was not a mere truism. Nothing suggests that Bright, as he led Todd to believe, had the ultimate authority to decide if Todd would be released based on the results of the interrogation, and even Bright testified that he did not have the power to recall the warrant.

Moreover, it appears that Todd was given the impression that his statement was being used by Bright for the sole purpose of determining whether to release him and that the decision would be based only on his statement. Todd had no idea that his statement was actually being recorded for use as additional proof of his alleged guilt and that Bright already had other, substantial evidence to establish probable cause: Todd's semen on a towel allegedly used during the rape;

clothes Todd allegedly ripped from the victim's body during the rape; and nude photographs of the victim crying, allegedly taken by Todd immediately after the rape. In light of this evidence, the trial judge could have found that Bright had absolutely no intention of attempting to recall the warrant based on what Todd told him and that Bright's encouragement was a mere ruse to obtain Todd's confession.[10]

Finally, it cannot be gainsaid that, as a matter of law, Bright's statement did not offer the slightest hope of benefit. Although the majority is correct that "[a] reward of lighter punishment is generally the 'hope of benefit' to which OCGA § 24-3-50 refers,"[11] our appellate courts have construed this provision to include the hope of reduced bail,[12] the hope of not being charged with a certain crime,[13] and the hope of being set free.[14] The hope of being set free is precisely how the trial court, which heard the evidence, characterized Bright's inducement in this case.

Again, although I may have reached a different conclusion than the trial court if I were sitting as the trier of fact, based on a totality of the circumstances, the trial court was authorized to find Bright's statement that Todd's confession could result in his release held "out at least some hope of reward by special consideration if [Todd] cooperate[d]."[15] Accordingly, I believe that the trial court did not clearly err when it ruled that the State failed to prove by a preponderance of the evidence that Todd's confession was made without the slightest hope of benefit. Accordingly, I would affirm the exclusion of Todd's confession from evidence.[16]

I am authorized to state that Judge Phipps joins in this dissent.

DECIDED JUNE 5, 2001 —
RECONSIDERATION DENIED JUNE 29, 2001 — ■

---

[10] See *State v. Ritter*, 268 Ga. 108, 109 (1) (485 SE2d 492) (1997) (where trickery is used to convey the slightest hope of benefit, confession is inadmissible); *Grades v. Boles*, 398 F2d 409 (4th Cir. 1968) (confession suppressed where prosecutor gave hope that defendant would not be charged with certain crimes, but in fact had no intention of following through with promise).

[11] *Ritter*, supra at 109 (1).

[12] See *Green v. State*, 154 Ga. App. 295-296 (267 SE2d 898) (1980) (ruling that officer's promise that he would set "bond as low as he could" constituted a hope of benefit); *Hickox v. State*, 138 Ga. App. 882, 884 (4) (227 SE2d 829) (1976) (officer's statement that he would "see that [defendant's] bond was lowered so he could get out of jail" constituted hope of benefit).

[13] See *Ritter*, supra at 110.

[14] See *In the Interest of R. J. C.*, 210 Ga. App. 286 (435 SE2d 759) (1993).

[15] *Askea v. State*, 153 Ga. App. 849, 851 (3) (267 SE2d 279) (1980).

[16] See *State v. Ray*, 272 Ga. 450, 452 (2) (531 SE2d 705) (2000).

*Daniel J. Porter, District Attorney, Jennifer Kolman, Assistant District Attorney,* for appellant.

*Scott A. Drake,* for appellee.