S05A2031. THE STATE v. DAVISON.
(623 SE2d 500)

CARLEY, Justice.
After police officers discovered that James Edward Johnson had been robbed and stabbed to death in his home, they located Appellee Kathi Davison, who initially denied that that was her name. Since the officers already knew who she was, they threatened to arrest her for giving a false name, and Detective Walker went to get handcuffs. Before she was restrained, however, she was told that the officers needed to talk with her about the victim because she was known to be acquainted with him. She indicated that he was like a father to her, and she began crying and agreed to go with Detective Scandrett to the police station for an interview. Another woman accompanied and consoled her. When Walker returned, he placed the handcuffs in his pocket, and Appellee was not placed under formal arrest. As Appellee entered the police car, she volunteered that Calvin Grizzard killed the

victim. At the police station, she gave a videotaped interview, in which Scandrett advised her that she was not under arrest, and she told him that Grizzard attacked her and Johnson. Appellee was not advised of her constitutional rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). After the interview, she was driven back to her home. Police subsequently discovered that, contrary to Appellee's statements, Grizzard was in Alabama at the time of the crimes. She was indicted for malice murder of Johnson, two alternative counts of felony murder, aggravated assault, and armed robbery.

1. Pursuant to Appellee's request, the trial court held a hearing to determine the voluntariness of her statements under *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). At the hearing, Scandrett and Walker testified, and the videotape of the interview was played. However, Appellee did not testify. The trial court found that, prior to Appellee's statements, the police officers clearly communicated to her that she was about to be taken into custody and was not free to leave, and, "[w]hen they ask[ed] for the statement, a reasonable person could say that if I don't give them what they want, then I'm going to be arrested, and that would be the kind of duress that the law does not allow." The trial court orally excluded the videotaped statement and subsequently entered a written order that all of the statements in question be suppressed, since they "were the result of coercive government activity." The State appeals directly from this order pursuant to OCGA § 5-7-1 (a) (4). See *State v. Nash*, 279 Ga. 646, 648 (1) (619 SE2d 684) (2005).

On appeal, "the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review. [Cit.]" *State v. Nash*, supra at 648 (2).

> In this case, . . . there are no disputed facts and no credibility issues. [Cit.] Only the officers testified, and the videotape of [Appellee's interview] is demonstrative objective proof of the circumstances surrounding [her statements]. Therefore, the question presented for resolution is whether the trial court erred in its legal conclusion that, under this undisputed evidence, [Appellee's statements were] inadmissible because [they "were the result of coercive government activity"]. In resolving this issue, "(i)t is the duty of this (C)ourt to independently review the evidence to determine whether the (S)tate has carried its burden of proving the admissibility of [Appellee's statements] by a preponderance of the evidence. (Cit.)" [Cit.]

*State v. Roberts*, 273 Ga. 514-515 (1) (543 SE2d 725) (2001).

The officers were clearly authorized to question Appellee in connection with their investigation of the homicide. The circumstances of their investigation " 'reveal none of the extreme tactics identified as the hallmarks of coercive police activity offensive to fundamental notions of due process,' [cit.], such as lengthy interrogation, physical deprivation, brutality, or deception." *Gober v. State*, 264 Ga. 226, 228 (2) (b) (443 SE2d 616) (1994). At most, the evidence shows that the officers threatened to arrest Appellee for giving them a false name. In the absence of any other factors which would suggest coercion, neither a threat to arrest, nor placement in a police cruiser, is so coercive as to render a statement involuntary. *United States v. Murphy*, 107 F3d 1199, 1205-1206 (II) (B) (6th Cir. 1997); *State v. Mooney*, 702 P2d 328, 331 (Kan. App. 1985). See also *Riviera v. State*, 190 Ga. App. 823, 825-826 (1) (380 SE2d 353) (1989) (officer's statement that he could arrest defendant's spouse constituted a mere truism which did not render defendant's statement involuntary). Thus, a law enforcement officer's statement that the defendant will be arrested immediately if she fails to cooperate is not, without more, so coercive as to deprive her of the ability to make an unconstrained decision to participate in an interview. *United States v. Mendoza*, 85 F3d 1347, 1351 (8th Cir. 1996). See also *State v. Todd*, 250 Ga. App. 265, 266 (549 SE2d 821) (2001) (it did not constitute an improper hope of benefit, but was a mere truism, for a detective to tell the defendant that, " 'if after we talk to you, we believe that probable cause doesn't exist, we are certainly not going to keep you arrested' "). The only "threat" here was that Appellee would be arrested for giving a false name to the officers. However, it is not a coercive tactic for a police officer to threaten to arrest a person for committing a crime in his presence, as he is constitutionally authorized to do. Accordingly, the trial court erred in its legal conclusion that, under the undisputed evidence, Appellee's statements were the result of coercive government activity.

2. Where the trial court has used a wrong standard in reaching its conclusion, a remand may be appropriate where legitimate factual issues are raised. *State v. Warren*, 242 Ga. App. 605, 606 (530 SE2d 515) (2000). "However, where there is no evidence which would authorize the grant of the motion to suppress, a remand is unnecessary. [Cit.]" *Bryant v. State*, 268 Ga. 664, 667 (6) (492 SE2d 868) (1997). As indicated above, the trial court's finding of coercion was not authorized by any evidence and, according to the transcript, it apparently confused that inapplicable theory with the test for custody under *Miranda*. " '*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that.' " *Wilson v. State*, 257 Ga. 444, 448 (10) (359 SE2d 891) (1987). The purpose of *Miranda* is to

insure that a statement is not the product of coercion, but the failure to comply with the mandate of *Miranda* is not itself a coercive tactic. See *Boatman v. State*, 272 Ga. 139, 141 (3) (527 SE2d 560) (2000). *Miranda* establishes a prophylactic rule which applies only to an accused's custodial statement which is made during interrogation. *Wilson v. State*, 264 Ga. 287, 289 (2) (444 SE2d 306) (1994). Here, there is simply no evidence to support the alternative theory that the detectives violated Appellee's *Miranda* rights. They clearly never placed her under arrest, and it is not the law that, "once a police officer has probable cause to arrest, he must arrest and *Mirandize*." *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995).

Even assuming that, when she was initially confronted, Appellee was in custody for purposes of *Miranda* while the officers prepared to arrest her, the evidence is undisputed that that custody quickly terminated. Statements "obtained from even police initiated interrogation are admissible without violating the suspect's Fifth Amendment rights if there has been an intervening break in custody. [Cits.]" *Wilson v. State*, 264 Ga. 289 (2), supra. The threat to arrest Appellee occurred immediately after the detectives located her and she denied her name. Once the discussion turned to the victim's death and she agreed to an interview, however, the initial concern over giving a false name became comparatively unimportant, resulting in the decision not to arrest her. There is no indication in the record that custody, if any, and a subsequent break therein induced Appellee's cooperation or constituted a mere ploy. See *State v. Bymes*, 258 Ga. 813, 814 (375 SE2d 41) (1989). To the contrary, Detective Walker, who was the only person to testify regarding the threat to arrest, strongly and emphatically denied that its purpose or effect was to force Appellee to go to the police station.

Moreover, even assuming that some taint from an initial brief period of custody remained as Appellee entered the police car, the undisputed testimony showed that her first statement blaming Grizzard was a completely voluntary utterance made prior to the commencement of any interrogation or its functional equivalent. *Johns v. State*, 274 Ga. 23, 24 (2) (549 SE2d 68) (2001). "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [the] holding [in *Miranda*]." *Miranda v. Arizona*, supra at 478 (III). "A police officer need not advise a suspect of his *Miranda* rights unless and until the officer begins questioning the suspect in custody. [Cit.]" *Pinckney v. State*, 259 Ga. App. 316, 318 (1) (a) (576 SE2d 677) (2003). "[W]here a defendant makes a voluntary statement without being questioned or pressured by an interrogator, the statements are admissible despite the absence of *Miranda* warnings. [Cit.]" *United States v. Murphy*, supra at 1204 (II) (B). " 'Voluntary, spontaneous outbursts that are not made in

response to any form of custodial questioning or interrogation are admissible at trial.' [Cits.]" *Pinckney v. State*, supra. The uncontroverted evidence demands the conclusion that Appellee was neither interrogated nor coerced with respect to her spontaneous statement when leaving for the police station. See *Johns v. State*, supra; *State v. Roberts*, supra; *Ramsey v. State*, 272 Ga. 28, 29 (2) (526 SE2d 842) (2000).

After Appellee arrived at the police station, Scandrett consoled her and, consistent with her claims, treated her like a victim. He repeatedly advised her that she was not under arrest for any crime. By the time of the interview, therefore, it was abundantly clear that any possible initial custody had terminated. Indeed, she was driven home after the interview. A reasonable person in Appellee's position would not have believed that she was being restrained to the degree associated with a formal arrest. See *Bolden v. State*, 278 Ga. 459, 463 (3) (604 SE2d 133) (2004); *Hodges v. State*, supra. Thus, the videotaped statement was not tainted by the absence of *Miranda* warnings. The circumstances set forth in the undisputed testimony, when viewed objectively, show that the videotaped statement was "not given during a custodial interrogation or its functional equivalent. Hence no *Miranda* warnings were required . . . . [Cits.]" *Robinson v. State*, 278 Ga. 836, 838 (2) (607 SE2d 559) (2005). Accordingly, the trial court erred in suppressing Appellee's statements.

*Judgment reversed. All the Justices concur.*

DECIDED DECEMBER 1, 2005.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Marc A. Mallon, Assistant District Attorneys*, for appellant.
*Brandon Lewis, Charles H. Frier*, for appellee.