304 Ga. 1
FINAL COPY

S18A0313.  COPE v. THE STATE.

BENHAM, Justice.

Appellant John Kennedy Cope appeals his convictions related to the death of Moses Mack.[1]  As grounds for his appeal, appellant contends the trial court erroneously admitted two statements he made to police.  For reasons set forth below, we now affirm his convictions.

The record construed in a light most favorable to upholding the jury's verdicts of guilty shows as follows.  The victim lived in a house with appellant's two brothers and their nephew.  Appellant's brother James Cope testified that, on the night in question, he and the victim were sitting in his room watching television when appellant arrived.  Appellant came into the

---

[1] The crimes occurred on December 7, 2013.  On April 2, 2014, a Chatham County grand jury indicted appellant on charges of malice murder, felony murder, and aggravated assault.  At the end of a trial that took place August 10-14, 2015, the jury returned a verdict of not guilty on the charge of malice murder and returned verdicts of guilty on the remaining charges.  On August 26, 2015, the trial court sentenced appellant to life in prison for felony murder.  The charge of aggravated assault merged for sentencing purposes.  Appellant filed a motion for new trial on August 28, 2015, and amended that motion on July 29, 2016.  The trial court denied the motion as amended on December 2, 2016.  Appellant filed a notice of appeal on December 30, 2016.  Upon receipt of the record from the trial court, the case was docketed to the term of this Court beginning in December 2017 and the case was submitted for a decision to be made on the briefs.

room and slapped the victim on his back, inciting an altercation. James testified that the victim pinned appellant between two chairs and punched him. Appellant's other brother Jerry Cope testified that, at about 1:30 a.m., he heard the altercation from his upstairs bedroom and that he came down to see what was happening. According to Jerry's testimony, the victim had the better of appellant when he walked into the room. Jerry testified that it appeared that the victim and appellant were intoxicated. Jerry testified he broke the two men apart and told them that one of them had to leave. At that point, Jerry testified appellant left the room and he went back upstairs, while the victim remained in James's room. James testified that after appellant left his room,[2] he and the victim continued watching television for about an hour and then eventually they went to bed. Witnesses testified that the victim slept on a cot in a first-level room at the back of the house.

A next door neighbor of the Cope residence testified he heard the voices of appellant and the victim at about 3:00 a.m., coming from the lower level and rear of the Cope house. He also testified he heard a thump and then heard

---

[2] Neither James nor Jerry testified they saw appellant leave the house after the altercation; however, appellant told police he did.

silence. None of the residents of the Cope house testified that they heard anything beyond the initial altercation in James's room that night.

Sometime between 8:00 a.m. and 8:15 a.m., the victim's employer testified he arrived at the Cope house in his car to pick up the victim for work. He testified that the victim was usually on the porch waiting for him when he arrived, but that on this morning the victim was not outside waiting for him. The victim's employer testified he saw appellant on the porch, so he asked appellant to go inside and wake the victim. The victim's employer testified appellant had a swollen eye, and appellant told him he had been in a fight with the victim. Appellant went inside the house and came back outside and told the victim's employer he could not rouse the victim. The victim's employer also asked appellant's nephew to go wake the victim, and he also came back saying he could not awaken the victim. The victim's employer testified he went inside to wake the victim, who was lying on his cot in the back room of the house, and, upon discovering that the victim was not breathing and cold to the touch, called 911.

Paramedics dispatched to the Cope residence found the victim lying on his cot in a back room of the house. When they moved the victim from his cot to the stretcher, they noticed that the victim had a significant head wound and

that there was a great amount of blood on his cot.  Since the victim had no pulse and was not breathing, the paramedics realized that they were dealing with a "crime scene," rather than a medical call.  At that point, the paramedics moved the body from the stretcher to the floor next to the cot, leaving the matter to police. The medical examiner testified the victim had been struck in the head multiple times and that the cause of death was blunt force trauma to the skull and brain.  The medical examiner also testified that the victim did not have any defensive wounds to his hands. Appellant later told police he and the victim had a fight and he hit the victim with a bat in self-defense.

1.  The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted.  See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2.  Appellant contends the trial court erred when it admitted two statements he made to police.  The trial court conducted a pretrial hearing to determine the admissibility of the statements.  The relevant facts from that hearing are as follows.  Appellant made three statements to police about the victim's death.  The first statement, which was video-recorded, was made on December 7, 2013, the date on which the victim's body was discovered.  At

that time, appellant was not under arrest; nevertheless, the investigator who interviewed him that day read him the Miranda[3] warnings as a precautionary measure. Appellant waived his rights and made a statement in which he denied knowledge of the victim's death. Police continued their investigation and issued a warrant for appellant's arrest in late December 2013. In January 2014, Detective Doug Herron, who knew one of appellant's relatives, agreed to help the team investigating the victim's death locate appellant. At the pretrial hearing, Detective Herron testified that on January 13, 2014, he received a phone call from appellant's relative indicating appellant was at the relative's residence. Detective Herron, who was off-duty at the time, testified he went over to the relative's house dressed in sweat pants and a t-shirt, without his firearm or his badge. When Detective Herron arrived, appellant was sitting on the front porch of the house. Detective Herron said he introduced himself to appellant, telling him he was there to talk about the victim. At that point, appellant told Detective Herron he had killed the victim in self-defense. Detective Herron testified he never asked appellant a question during this exchange, which was not recorded. After appellant's admission, Detective

---

[3] Miranda v. Arizona, 384 U .S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

Herron testified appellant's family members drove him to the police station. At the police station, Detective Herron testified he read appellant his Miranda warnings, appellant waived his rights and gave a video-recorded statement during which he admitted hitting the victim with a bat. Appellant told Detective Herron that the victim was beating him "to death" and so he retrieved a bat and hit the victim with it in self-defense.

On appeal, appellant contends his first statement to Detective Herron was inadmissible because he did not receive Miranda warnings. "Miranda establishes a prophylactic rule which applies only to an accused's custodial statement which is made *during interrogation*." (Emphasis supplied.) State v. Davison, 280 Ga. 84 (2) (623 SE2d 500) (2005). "The issue of whether a statement was the result of an interrogation or was instead volunteered is a determination of fact for the trial court, and it will not be disturbed unless it is clearly erroneous." Velazquez v. State, 282 Ga. 871 (8) (655 SE2d 806) (2008). Appellant was not being interrogated at the time he told Detective Herron he killed the victim in self-defense; rather Detective Herron had merely introduced himself and stated that he was there to talk about the victim. A voluntary and spontaneous outburst which is not made in response to custodial questioning is admissible at trial. See id. at 877-878. Neither the existence of

an arrest warrant nor probable cause for a suspect's arrest is a factor that would have required Officer Herron to give <u>Miranda</u> warnings before speaking to appellant in these circumstances. See <u>State v. Davison</u>, supra, 280 Ga. at 87 ("it is not the law that, 'once a police officer has probable cause to arrest, he must arrest and *Mirandize*.' [Cit.]"). Accordingly, the trial court did not err when it admitted into evidence the statement appellant made to Detective Herron while sitting on his relative's porch.

Appellant contends his second statement to Detective Herron, which was video-recorded and provided after a waiver of <u>Miranda</u> rights, was inadmissible because appellant was intoxicated and incoherent to the extent his statement was rendered involuntary. We disagree. During the video-recorded interview, Detective Herron asked appellant if he had consumed any alcohol and appellant responded in the affirmative, stating he had "gin and juice" earlier that day. At the pretrial hearing, however, Detective Herron testified that he could not smell any alcohol on appellant. Our review of the video[4] does indicate that appellant often mumbled his responses and spoke quickly in a thick vernacular, making it difficult to understand everything he said.

---

[4] When facts are "discernible from a videotape, our review is de novo." (Citations and punctuation omitted.) <u>Sosniak v. State</u>, 287 Ga. 279 (1) (695 SE2d 604) (2010).

However, the video is consistent with the trial court's findings that appellant understood the rights read to him and that appellant responded appropriately to questions about the death of the victim.[5] Appellant told Detective Herron that on the night in question, the victim was beating him "to death" and so he obtained a bat and hit the victim with it. Appellant made this admission more than once during the interview. The trial court was authorized to conclude that appellant's second statement to Detective Herron was voluntarily made and, therefore, admissible. See Bergeson v. State, 272 Ga. 382 (4) (530 SE2d 190) (2000). See also Krause v. State, 286 Ga. 745 (7) (691 SE2d 211) (2010).

Judgment affirmed. All the Justices concur.

---

[5] While appellant did bring up matters unrelated to the circumstances of the victim's death, he stayed on topic for a majority of the interview.

Decided June 18, 2018.

Murder. Chatham Superior Court. Before Judge Freesemann.

Steven L. Sparger, for appellant.

Meg E. Heap, District Attorney, Emily C. Puhala, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.