A99A0191. POLLARD v. THE STATE.
(518 SE2d 463)

BLACKBURN, Presiding Judge.

Following a jury trial, Jack Pollard appeals his conviction of voluntary manslaughter, contending that there was insufficient evidence to support the conviction and that the trial erred by: (1) admitting into evidence the victim's statements to witnesses; (2) admitting into evidence his incriminating statements made to police at the scene; (3) admitting into evidence his incriminating custodial statements; (4) limiting defense counsel's cross-examination of the victim's sister regarding prior acts of violence by the victim; and (5) allowing physicians who treated the victim to testify regarding the extent of the victim's wound and the degree of force required to cause such a wound. For the reasons discussed below, we affirm.

1.

On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Pollard] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Punctuation omitted.) *Barber v. State*, 235 Ga. App. 170 (509 SE2d 93) (1998). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Viewed in this light, the evidence shows that on November 2,

1996, Theodore Kirksey, Phillip Moore and Pollard went to Pollard's home to watch a video. Subsequently, Moore's wife called him to lunch, and he returned to his home next door in the duplex. Minutes later, while Moore was eating, Kirksey knocked on his door. Kirksey told Moore that Pollard had just stabbed him. When Kirksey lifted his shirt, Moore saw a small cut to the left of Kirksey's breast bone, but Kirksey was not bleeding a lot. Moore went in his duplex to call for help and did not see Kirksey again.

Kirksey left the duplex and went to an apartment complex where Cheryl Girard met him in the yard. Kirksey asked to use the phone and said that he needed help, because he had been stabbed. Shortly thereafter, Kirksey also told Mary Ellen Rollins that Pollard had stabbed him.

Brunswick Police Officer Ron Harris and Corporal McKenney Tremble arrived while Kirksey was being treated by medical personnel and spoke with the bystanders who directed them to Pollard's house. Harris, Tremble and two other officers went to Pollard's home and identified themselves. The officers stated they were investigating a stabbing, whereupon Pollard invited them into his house and immediately told the officers that he had stabbed Kirksey and demonstrated how it had happened. The officers asked where the knife was, and Pollard gave it to them.

Pollard was arrested on charges of aggravated assault, taken to the police station and advised of his *Miranda* rights. Pollard signed a waiver of rights form and then gave an oral statement to Corporal Tremble in which he admitted to stabbing Kirksey after a dispute over watching a video.

Although Kirksey did not appear seriously injured, the stabbing proved fatal. Kirksey died at the hospital. However, prior to his death, Kirksey told an emergency room nurse, Mary Jane Hurd, that he had been stabbed with a kitchen knife.

Pollard gave a taped statement to Detective Chanclor in which he admitted to stabbing Kirksey. Pollard learned after giving this statement that Kirksey had died. Pollard was tried and convicted and filed this appeal.

There is ample evidence to authorize the jury's finding that Pollard was guilty, beyond a reasonable doubt, of voluntary manslaughter and to support the conviction. See *Jackson*, supra.

2. Pollard contends the trial court erred by admitting into evidence Kirksey 's statements made to witnesses shortly after the stabbing.[1] However, by failing to object to this testimony at trial, Pollard has waived his right to assert on appeal that the statements were

---

[1] Kirksey's statements to Moore, Girard, Rollins and Hurd.

inadmissible hearsay. *Basu v. State*, 228 Ga. App. 591, 592 (1) (492 SE2d 329) (1997).

Moreover, the statements were so close in time to the stabbing that the witnesses' testimony was admissible under the doctrine of res gestae. *Basu*, supra; *Park v. State*, 230 Ga. App. 274, 278 (5) (495 SE2d 886) (1998). OCGA § 24-3-3 provides that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae."

> As explained in *Brantley v. State*, [177 Ga. App. 13, 14-15 (2) (338 SE2d 694 (1985)] what the law altogether distrusts is not after-speech but afterthought. . . . If the declarations appear to spring out of the transaction — if they elucidate it — if they are voluntary and spontaneous, and if they are made at a time so near to it, as reasonably to preclude the idea of deliberate design, then they are to be regarded as contemporaneous.

(Punctuation omitted.) *Sims v. State*, 234 Ga. App. 678, 682 (2) (507 SE2d 845) (1998). Kirksey spoke to the witnesses while still under the strain and anxiety of the stabbing. The statements were so closely connected in time to the stabbing so as to be free of afterthought and were therefore admissible.

3. Pollard next contends that his statements made in response to Officer Tremble's initial inquiry at Pollard's residence were inadmissible since he had not been given his *Miranda* warnings. " '*Miranda* warnings are not required when a person responds to an officer's initial inquiry at an on-the-scene investigation which has not become accusatory.' " *Thompson v. State*, 234 Ga. App. 74, 75 (1) (506 SE2d 201) (1998).

> A suspect must be in a custodial situation for *Miranda* to apply; a suspect is not entitled to *Miranda* warnings, as a matter of right, unless he has been taken into custody or has been deprived of freedom of action in another significant way. *Hardeman v. State*, 252 Ga. 286, 288 (1) (313 SE2d 95) (1984); *Carroll v. State*, 208 Ga. App. 316, 317 (2) (430 SE2d 649) (1993).

(Punctuation omitted.) *Thompson*, supra at 76 (1).

> A person is not in a state of custody merely because he is a prime suspect at the time he is interrogated by the police or their agent. Even if the police have probable cause to arrest at the time of the interview and secretly intend to charge the

suspect at some future time, such facts are immaterial to a determination of whether the suspect was in custody at the time of the interview, except when and to what extent the police communicate their future intent to arrest during the course of the interview. . . . The real issue for adjudication is whether the individual was formally arrested or restrained to the degree associated with a formal arrest. In resolving this issue, the relevant inquiry is how a reasonable person in a suspect's position would perceive his situation; that is, whether a reasonable person in [Pollard's] position would have understood the situation to constitute restraint on freedom of movement of the degree which the law associates with formal arrest.

(Citations and punctuation omitted.) *Thompson,* supra at 75-76 (1); *Hendrix v. State,* 230 Ga. App. 604, 605-606 (1) (497 SE2d 236) (1997).

In this case, Pollard, while in his own home, voluntarily confessed to the stabbing moments after the police officers told him they were conducting an investigation. Even if Pollard were a suspect at the time, there is no evidence that he was restrained or placed under arrest, and as such, legal safeguards applicable to custodial statements are inapposite to this case. His initial statements to Tremble were voluntarily made under noncustodial circumstances, and the trial court did not err in admitting the statement. *Hendrix,* supra; *Whatley v. State,* 196 Ga. App. 73, 78 (5) (395 SE2d 582) (1990).

4. Pollard argues that his incriminating custodial statements made at the police station were involuntary and therefore inadmissible at trial. "[W]hether a defendant waives his rights under *Miranda* and makes a voluntary and knowing statement depends on the totality of the circumstances." (Citation omitted.) *Henry v. State,* 264 Ga. 861, 862 (2) (452 SE2d 505) (1995). "On appeal, the standard of review is whether the trial court was clearly erroneous in its factual findings on the admissibility of this statement." Id.

With regard to the oral statement made to Tremble, Pollard points to the fact that the statement was not recorded and that Pollard did not sign or verify the notes taken by Tremble. However, these circumstances go to the weight and credibility of the statement, not to the admissibility of the statement. The trial court did not err in determining that the custodial statement to Tremble was admissible.

With regard to his recorded statement to Chanclor, Pollard contends the statement was involuntary, arguing that he was tricked because he was unaware at the time that Kirksey had died.

[U]se of trickery to obtain a confession does not render the confession inadmissible so long as " 'the means employed are not calculated to procure an untrue statement.' " *Moore v. State*, 230 Ga. 839, 840 (1) (199 SE2d 243) (1973). And absent any evidence that the police investigative techniques were designed to induce the "slightest hope of benefit or . . . fear of injury," the resulting statements are not rendered involuntary and inadmissible under OCGA § 24-3-50. *State v. Ritter*, 268 Ga. 108 (1) (485 SE2d 492) (1997); *Lewis v. State*, 255 Ga. 681 (3) (341 SE2d 434) (1986).

*DeYoung v. State*, 268 Ga. 780, 789 (8) (493 SE2d 157) (1997).

In this case, during the interview, Pollard did not ask about Kirksey, and Chanclor did not make any representations about the well-being of Kirksey. Pollard again stated that he had stabbed Kirksey. Toward the end of the interview, Chanclor told Pollard that Kirksey had died. Unlike *Ritter*, supra, upon which Pollard relies, the record does not show that Chanclor misrepresented the condition of Kirksey in the hopes of obtaining a statement. Based on this evidence, we cannot say that the trial court's determination that Pollard's statement was freely and voluntarily made was clearly erroneous. Moreover, in light of Pollard's previous incriminating statements, first at his home and later to Officer Tremble, any error in admitting the recorded statement would be harmless. See *Johnson v. State*, 266 Ga. 775 (5) (470 SE2d 637) (1996).

5. Pollard contends the trial court erred by limiting defense counsel's cross-examination of Mary Kirksey Clark, the victim's sister, with regard to prior acts of violence by the victim. Although "[t]he right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him," OCGA § 24-9-64, the trial court has the discretion to limit the scope of cross-examination. *Duckworth v. State*, 268 Ga. 566, 567 (1) (492 SE2d 201) (1997). Absent an abuse, the court's discretion will not be interfered with on appeal. *Sweeney v. State*, 233 Ga. App. 862, 866 (6) (506 SE2d 150) (1998).

On cross-examination, defense counsel questioned Clark about a prior incident in which the victim had struck another man with a pipe. Clark testified that she had no knowledge of the incident. Defense counsel sought to continue this line of questioning and proffered a police report which failed to refresh Clark's memory. Since Clark had no knowledge of the incident, the trial court properly restricted defense counsel's cross-examination.

6. Pollard contends that the trial court erred by allowing the physicians who treated Kirksey to testify regarding the force required to cause such an injury. At trial, Dr. Stephen Kitchen testi-

fied to the force required without objection, so any error was waived. However, an objection was raised to Dr. Peter Bossak's opinion that the injury resulted from a crosswise or upward thrust with more force than a casual jab.

> Whether or not a witness is allowed to testify as an expert is a question for the sound discretion of the trial court and such discretion, unless abused, will not be disturbed. Generally nothing more is required to entitle one to give testimony as an expert than that he has been educated in the particular trade or profession; and special knowledge involving a particular subject may be derived from experience as well as study and mental application.

(Citation omitted.) *Dennis v. State*, 158 Ga. App. 142, 143 (3) (279 SE2d 275) (1981). The State qualified Dr. Bossak as an expert in the field of emergency medicine with experience in treating stab wounds. We find no abuse of discretion by the trial court.

*Judgment affirmed. Barnes, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MAY 26, 1999.

*James J. Lacy, Timothy L. Barton*, for appellant.
*Stephen D. Kelley, District Attorney, Ann S. Williams, Assistant District Attorney*, for appellee.