## A04A0212. RICHARDSON v. THE STATE.
### (595 SE2d 565)

ELDRIDGE, Judge.

A Gwinnett County jury found Willie Richardson guilty of rape and aggravated sexual battery. He appeals, claiming that the trial court erred in permitting the introduction of his statement to the police and that he received ineffective assistance of counsel at trial. For the reasons that follow, we affirm Richardson's conviction.

Following the sexual acts Richardson perpetrated against the female victim, she reported the incident to the police. Investigation corroborated portions of the victim's version of the event, including Richardson's admissions to at least two other people that he had sex with the victim while she was highly intoxicated. Investigation also showed that the victim suffered a laceration in her vaginal area and bruising around her arms as a result of Richardson's acts.

Further investigation of Richardson's admissions to others showed that Richardson believed his sexual encounter with the victim was consensual; that the victim had indicated she wanted to have sex with Richardson when she "raised up, turned around" and made her body available for a sexual encounter; and that during the sex act, the victim suddenly "freaked out" and "just went berserk."

Based upon these investigations, Gwinnett County Police Officer T. Benning contacted Richardson by telephone and asked him to come into the station for an interview. Although Richardson believed the sex act with the victim was consensual, he had heard from others

---

that the victim had "told the police that [he] raped her and beat her." Richardson agreed to talk to the police, but could not go to the station immediately. Benning made an appointment to speak with Richardson the next morning. That afternoon, Benning obtained warrants for Richardson's arrest on the charges of rape and sexual battery. At trial, Benning testified that he intended to arrest Richardson on the warrants, but not until after Richardson had given a statement.

The next morning, Richardson's fiancée, Donna Martin, drove him to the station for the interview. It is undisputed that Richardson went to the station voluntarily. Officer Benning greeted both of them, and all three briefly sat in the interview room together. There, Martin specifically asked Benning if he planned to arrest Richardson. Benning demurred, stating he would "see how the interview went before a decision was made as to whether or not he would be taken into custody." At trial, Benning candidly testified that this statement was untrue. He testified that he made such statement,

> [b]ecause I wanted [Richardson] to tell me what happened. I wanted to put him in [an] as intimidation free environment as I could. It's already intimidating knowing that you are a suspect of a crime, that you're at police headquarters. I didn't want to put him in custody where I would be forced to have to mirandize him making him even more intimidated about the interview. I was simply after the truth. I wanted him to be in a position to where he would tell me the truth about what happened, so this is the way I chose to go about it.

After making his misleading statement, Benning escorted Martin to a waiting area. On the way there and out of earshot of Richardson, Benning told Martin that he intended to arrest Richardson.

Thereafter, during the interview, Richardson agreed to give a taped statement; his statement corroborated the admissions he had earlier made to others, i.e., that the victim, although intoxicated, had physically indicated to him that she desired a sexual encounter; that she did so by deliberately positioning her body so as to be available for a sexual encounter; and that thereafter, during the sex act, the victim "just went crazy, started hollering and [he] couldn't tell — just you raped me." Richardson stated that he immediately stopped the sex act and "was trying to fight her off . . . to block where she was swinging at [him] trying to hit [him]"; he stated that he drove her directly to a friend's apartment.

It is uncontested that, during the course of the interview, Officer Benning never gave Richardson the impression that he was under arrest or in police custody. On the interview tape, Richardson stated

he did not believe he was in custody or under arrest. The evidence is equally undisputed that, unbeknownst to Richardson, he was not free to leave the station and he was to be placed under arrest on the outstanding warrants after he gave his statement. *Held*:

1. Richardson first challenges the admission of his taped statement made without benefit of *Miranda*. This claim of error requires consideration of several issues inherent in any claim involving *Miranda* and the admission of an allegedly involuntary statement.

The constitutional protections provided by *Miranda* demand that it be enforced strictly, but only in those types of situations in which the concerns that powered that decision are implicated. In that regard,

> It was the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted, which led the Court to impose the *Miranda* requirements with regard to custodial questioning.[1]

The instant case gives this Court the opportunity to reaffirm the longstanding, objective principle that "[a] policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation,"[2] i.e., whether "a reasonable person in the suspect's position would have understood the situation to constitute restraint on freedom of movement of the degree which the law associates with a formal arrest."[3]

Here, it is plain — and uncontested — that at the time he gave his statement, Richardson did not believe he was in custody or under arrest. And, prior to the statement, Officer Benning never communicated to Richardson his intent to place him under arrest.[4]

---

[1] (Citations and punctuation omitted.) *Beckwith v. United States*, 425 U. S. 341, 346-347 (96 SC 1612, 48 LE2d 1) (1976). Accord *McAllister v. State*, 270 Ga. 224, 227 (1) (507 SE2d 448) (1998); *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995).

[2] (Footnote omitted.) *Berkemer v. McCarty*, 468 U. S. 420, 442 (104 SC 3138, 82 LE2d 317) (1984); accord *Sutton v. State*, 223 Ga. App. 721, 722-723 (1) (478 SE2d 910) (1996). See also *Tolliver v. State*, 273 Ga. 785, 786 (546 SE2d 525) (2001).

[3] (Citations and punctuation omitted.) *Tolliver v. State*, supra at 786; accord *Pollard v. State*, 238 Ga. App. 253, 256 (3) (518 SE2d 463) (1999). See also *McConville v. State*, 228 Ga. App. 463, 465 (1) (491 SE2d 900) (1997).

[4] See *Metheny v. State*, 197 Ga. App. 882, 884 (1) (a) (400 SE2d 25) (1990) (officer did nothing which would have communicated to defendant he was in custody); accord *Lancaster v. State*, 240 Ga. App. 359, 362 (2) (522 SE2d 30) (1999).

> Save as they are communicated or otherwise manifested to the person being questioned, an officer's evolving but unarticulated suspicions do not affect the objective circumstances of an interrogation or interview, and thus cannot affect the *Miranda* custody inquiry. The threat to a citizen's Fifth Amendment rights that *Miranda* was designed to neutralize has little to do with the strength of an interrogating officer's suspicions.[5]

Thus, under circumstances similar to those presented here, it has been held that *Miranda* warnings are not required because the "compulsive" aspect of custodial questioning is not present.[6]

Nor are we troubled that Officer Benning had already obtained arrest warrants for Richardson. Probable cause to arrest, whether demonstrable by warrant or knowledge of an officer,[7] does not require arrest and *Miranda*.[8] "[T]he proper inquiry is whether [at the time of the statement] the individual was formally arrested or restrained to the degree associated with a formal arrest, not whether the police had probable cause to arrest."[9]

We do, however, find specific circumstances surrounding the giving of Richardson's statement to be problematic. Our concerns go to the voluntary aspect of the statement and are raised by Officer Benning's deceptive act of informing Richardson that a decision had *not* been made as to whether he would be arrested and that such decision was dependent on "how the interview went."

The purpose of *Miranda* warnings are prophylactic in that they serve to insure that an in-custody statement is still voluntary and not compelled by circumstances. Certainly, then, the *failure* to communicate an officer's true intent with regard to taking a suspect into custody will not control the need for *Miranda* warnings, since the compulsive aspect of custody is not present so as to impact on the voluntary nature of the statement. It does not follow, however, that an officer's communication of a false intent engenders the same "voluntary" result.

To make a confession admissible, it must have been made

---

[5] (Citation and punctuation omitted.) *Stansbury v. California*, 511 U. S. 318, 324-325 (114 SC 1526, 128 LE2d 293) (1994).

[6] *Hodges v. State*, supra at 872 (2).

[7] *Patterson v. State*, 274 Ga. 713, 715-716 (2) (559 SE2d 472) (2002) (warrantless arrest is valid if arresting officer has reliable knowledge about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense).

[8] *Hodges v. State*, supra at 872.

[9] (Citations omitted.) Id.

voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury.[10]

In that vein, "[t]he law is well established that use of trickery and deceit to obtain a confession does not render it inadmissible, so long as the means employed are not calculated to procure an untrue statement. [Cit.]"[11] This principle, although well established, is not without exception. A reviewing court must examine the effect of any deceit upon the voluntariness of a confession.

> Thus, while deceit may not on its own render a statement inadmissible (where not calculated to procure an untrue statement), we hold that in looking to the totality of the circumstances, the employment of deceit may result in the inadmissibility of a statement in those situations where the particular deception used, by constituting a "slightest hope of benefit or remotest fear of injury" under OCGA § 24-3-50, has induced a party to confess, thereby rendering the confession involuntary.[12]

In this case, Officer Benning falsely represented that the decision to arrest and charge Richardson would hinge upon the content of his interview. This false representation was made based upon Benning's assessment that Richardson would be "intimidated" and might not speak freely if Benning "put him in custody where [the officer] would be forced to have to mirandize him making him even more intimidated about the interview." As such, Officer Benning's deceptive statement was made to induce Richardson to speak, to "tell [him] what happened." And, most importantly, implicit in Benning's statement is the false promise that Richardson would not be arrested and charged depending on "how the interview went."[13] Under these circumstances, the inescapable conclusion is that the voluntariness of Richardson's statement was compromised because it was "induced by another by the slightest hope of benefit or remotest fear of injury."[14]

---

[10] OCGA § 24-3-50.

[11] *State v. Ritter*, 268 Ga. 108, 110 (1) (485 SE2d 492) (1997).

[12] (Citation omitted.) Id.

[13] Id. at 110-111.

[14] OCGA § 24-3-50; *State v. Ray*, 272 Ga. 450, 451-452 (531 SE2d 705) (2000) (officers induced confession by holding out a hope of benefit in the form "years of freedom"); compare *Moore v. State*, 230 Ga. 839, 840 (199 SE2d 243) (1973) (an officer's false statement that murder weapon had been found did not require an answer from defendant, held forth no benefit or threat, and thus did not "compel" subsequent statement); accord *Harris v. State*, 274 Ga. 422, 424 (3) (554 SE2d 458) (2001); see also *Davis v. State*, 245 Ga. App. 508, 509 (538 SE2d 159) (2000) (making defendant aware of potential legal consequences associated with charges against him does not render statement inadmissible).

While the term "hope of benefit" contained in OCGA § 24-3-50 has been interpreted generally as a reward of lighter punishment on the charges,[15] we find that "hope of benefit" may also include, as in this case, the reward of no charges at all.

Even as we recognize the involuntary aspect of Richardson's statement, our consideration does not end there. This is so because the erroneous admission of an involuntary statement is subject to a harmless error analysis.[16] From the record, it appears clear that Richardson's statement to Officer Benning was substantively the same as the statements he made to two other State's witnesses, both of whom testified at trial. His statement was also consistent with his theory of defense, i.e., the victim consented to the sex act and then inexplicably "went crazy," and Richardson's own trial testimony mirrored his statement in furtherance of this "consensual" defense. Under these circumstances and "[i]n light of the cumulative nature of the confession, any error in its admission was harmless."[17]

2. Richardson also claims he received ineffective assistance of counsel at trial because his defense attorney failed to inform him that a conviction for rape carries a ten-year mandatory minimum sentence without possibility of parole per OCGA § 17-10-6.1, and his attorney failed to object to the State's reading of preliminary instructions to the jury. To prevail on this claim of ineffective assistance of counsel, Richardson must show counsel's performance was deficient and that the deficient performance prejudiced him.[18] Further, a trial court's findings with respect to effective assistance of counsel will be affirmed unless such findings are clearly erroneous.[19]

(a) Richardson's trial attorney testified at the hearing on the motion for new trial. In response to the instant complaint, defense counsel testified that he repeatedly explained to Richardson that "if he gets convicted of rape even if the Judge wanted to put him on probation he had to give him ten years to serve and he had to serve every day. We had that discussion from the git go in this case." Since there is evidence in the record that Richardson's trial attorney informed him of the mandatory minimum ten-year sentence without possibility of parole pursuant to the sentencing requirements of

---

[15] *State v. Ritter*, supra at 109.

[16] See *Arizona v. Fulminante*, 499 U. S. 279, 309-311 (111 SC 1246, 113 LE2d 302) (1991); see also *McIntyre v. State*, 266 Ga. 7, 22 (6) (463 SE2d 476) (1995) (Sears, J., dissenting in part).

[17] (Citation omitted.) *Burnham v. State*, 265 Ga. 129, 134 (6) (453 SE2d 449) (1995); accord *Borders v. State*, 270 Ga. 804, 809 (3) (514 SE2d 14) (1999); *Tankersley v. State*, 261 Ga. 318, 321 (2) (b) (404 SE2d 564) (1991); *McLendon v. State*, 259 Ga. 778, 780 (4) (387 SE2d 133) (1990).

[18] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[19] *Potter v. State*, 273 Ga. 325, 326 (540 SE2d 184) (2001).

OCGA § 17-10-6.1, the trial court's conclusion that Richardson received effective assistance of counsel is not clearly erroneous.[20]

(b) Richardson fails to show error and/or prejudice from the State's reading of preliminary instructions to the jury. Thus, "[a]ppellant failed to prove either deficiency or prejudice so as to demonstrate a viable *Strickland*[21] claim of ineffective assistance of trial counsel."[22]

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 19, 2004.

*Jonathan R. Melnick*, for appellant.

*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney*, for appellee.

---

[20] Id. at 328.

[21] *Strickland v. Washington*, supra.

[22] *Williams v. State*, 276 Ga. 384, 387 (5) (578 SE2d 858) (2003).