## A09A1969. ROWE v. THE STATE.
(690 SE2d 884)

MILLER, Chief Judge.

A jury convicted Misty Simone Rowe of concealing the death of another person (OCGA § 16-10-31). Rowe appeals, contending that the trial court erred (i) in denying her motion to suppress statements she made during the on-scene police investigation of the incident at her apartment, and (ii) in allowing the State to prove the identity of the victim by autopsy fingerprint cards. Rowe also challenges the sufficiency of the evidence, arguing that her confession was uncorroborated. Discerning no error, we affirm.

Viewed in the light most favorable to the verdict (*Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007)), the record shows that on July 18, 2007, the Clayton County Police Department received a 911 call from Rowe's apartment complex reporting a possible dead body on the premises. Officer Jeffrey Burdette responded to the scene to investigate. On his arrival, the 911 caller, a security guard, informed Officer Burdette that Rowe might have stabbed her boyfriend, John Perry. Shortly thereafter, Rowe arrived in a van with an unidentified individual. Upon seeing her, Officer Burdette questioned Rowe to determine the safety and welfare of Mr. Perry. Rowe told Officer Burdette that she and Perry had been in a verbal and physical fight two weeks earlier in which he had stabbed her in the knee with a knife; that she had taken the knife from Perry and stabbed him; and that Perry had run out of the apartment and returned to New Jersey. Asked about the van's cargo, a new carpet, Rowe explained that she intended to use it as a replacement for the blood-stained carpet in her apartment which resulted from the couple's fight. Thereafter, Rowe gave Officer Burdette and Sergeant Anthony Thuman, a second officer who had arrived on the scene, her consent to enter the apartment. Upon doing so, the officers went to Rowe's bedroom and saw where the blood-stained carpet and underlying carpet pad had been as well as what appeared to be blood along a baseboard.

As the officers exited the apartment, Officer Burdette asked Rowe if she would give a written statement regarding the incident. This Rowe did. Rowe also agreed to go to the county police department for further questioning. Shortly after her arrival at the department, a body was located behind a dumpster near Rowe's apartment. On learning of this, Detective James Eskew, one of the detectives who had taken her to the department, advised Rowe of her *Miranda*[1] rights. These Rowe waived and thereafter gave a second

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

written statement in which she described how she stabbed Perry four times, wrapped his body in plastic, and rolled his body downhill to the area of the dumpster.

Georgia Bureau of Investigation ("GBI") fingerprint expert Albert Rowland later identified the body as that of Perry based on a comparison of post-mortem fingerprints made thereof and Perry's known fingerprints.

1. Rowe contends that the trial court erred in denying her motion to suppress her pre-*Miranda* and post-*Miranda* statements to police. She argues that her verbal and written pre-*Miranda* statements at her apartment should have been suppressed because she was in custody as "never [having been] without a police escort." As to her post-*Miranda* written statement to police, Rowe argues that the State failed to meet its burden to establish that she knowingly, voluntarily, and intelligently waived her rights. We disagree on each account.

> [T]he trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous[; however], where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). "A suspect must be in a custodial situation for *Miranda* to apply; a suspect is not entitled to *Miranda* warnings, as a matter of right, unless he has been taken into custody or has been deprived of freedom of action in another significant way. [Cits.]" *Pollard v. State*, 238 Ga. App. 253, 255 (3) (518 SE2d 463) (1999).

(a) Rowe claims that *Miranda* warnings were required because the police were with her throughout the time she was subjected to on-the-scene questioning. It is well settled, however, that a "law enforcement officer coming upon the scene of suspected criminal activity will [routinely] conduct a general on-the-scene investigation and may detain temporarily anyone at the scene. . . . Such detentions do not trigger the requirements of *Miranda*. . . ." (Citations and punctuation omitted.) *Lankford v. State*, 204 Ga. App. 405, 406 (2) (419 SE2d 498) (1992); *Pollard*, supra, 238 Ga. App. at 255 (3). Even were Rowe a prime suspect at the time of questioning, as she suggests, such suspicion does not mandate *Miranda* warnings unless a reasonable person in the suspect's position would have "understood the situation to constitute restraint on freedom of movement of

the degree which the law associates with [a] formal arrest." (Citations and punctuation omitted.) Id. at 256 (3).

Here, Rowe voluntarily admitted stabbing Perry in her apartment after Officer Burdette advised her that he was investigating a report of a possible dead body. Even if Rowe were a suspect while in the presence of police at that time, there is no evidence that she was under any form of restraint or that she had been placed under arrest. Accordingly, Rowe's initial statements on the scene, whether oral or written, were voluntarily made under noncustodial circumstances, and their admission into evidence absent *Miranda* warnings was not error. *Pollard*, supra, 238 Ga. App. at 256 (3).

(b) Rowe also argues that the trial court erred in refusing to suppress her post-*Miranda* written statement to Detective Eskew as not knowingly, voluntarily, and intelligently given because the evidence shows that she was advised of and waived her *Miranda* rights approximately one hour after she gave her written statement to Detective Eskew. We are not persuaded.

The record shows that Rowe gave her initial written statement to Officer Burdette at 3:30 p.m. on the date of the incident, but was unwilling to talk with him further. Asked if she would talk to detectives, Rowe agreed and was transported to the Clayton County Police Department to do so. There, upon being advised that a dead body had been recovered at the scene, Detective Eskew advised Rowe of her *Miranda* rights at 4:43 p.m. Rowe then waived these rights and gave her written confession immediately thereafter.

In cross-examining Detective Eskew, trial counsel pointed out that the time written on Rowe's statement was 3:30 p.m. in an effort to show that the above-referenced confession had been given without the required *Miranda* warnings. Detective Eskew, however, explained the discrepancy as attributable to a possible failure to adjust the clock in the interview room for daylight savings time, and he was otherwise certain that Rowe gave her confession after she waived her *Miranda* rights. Nothing of record supports Rowe's claim that she was subjected to an interview lasting "three to four hours." Nor does Rowe otherwise contend that her confession was coerced or induced upon hope of benefit. Thus, the trial court's denial of her motion to suppress on this account was not clearly erroneous. *Vansant*, 264 Ga. at 320 (1).

2. Rowe contends that the trial court erred in allowing the testimony of the State's fingerprint expert, GBI employee Rowland, identifying Perry as the victim based on his comparison of a post-mortem fingerprint card belonging to the victim and a fingerprint card bearing Perry's known fingerprints. Finding such testimony to be admissible under the business record exception to the hearsay rule, we disagree.

VALELAW LIBRARY

"A witness identifying business records under OCGA § 24-3-14 does not have to have personal knowledge of the correctness of the records or have actually made the entry himself. [Cit.]" *Davis v. State*, 194 Ga. App. 902, 904 (2) (392 SE2d 327) (1990). The witness laying the foundation for the admission of business records need only be familiar with the method of recordkeeping to testify about the record. *Nalley Northside Chevrolet v. Herring*, 215 Ga. App. 185, 186 (3) (450 SE2d 452) (1994). Rowland testified that he was familiar with GBI's methods of recordkeeping; that the GBI maintained post-mortem fingerprint cards in the regular course of business; and that they were made contemporaneously with autopsies of dead persons conducted at the morgue. Thus, a proper foundation was laid, and the fingerprint cards were properly admitted in evidence as business records.

3. Finally, Rowe challenges the sufficiency of the evidence, arguing that her confession was uncorroborated. Again, we disagree.

The "concordance of name alone is some evidence of identity. Identity of name presumptively imports identity of person, in the absence of any evidence to the contrary." (Citations and punctuation omitted.) *Roebuck v. State*, 277 Ga. 200, 201 (1) (586 SE2d 651) (2003). Rowe admitted that she stabbed Perry to death in an apparent domestic dispute. Given Rowland's testimony, as above, identifying John Perry as the dead body found behind the dumpster in Rowe's apartment complex "wrapped in bags," Rowe's confession was duly corroborated. See *Williams v. State*, 270 Ga. App. 424, 426 (1) (606 SE2d 871) (2004) ("A confession alone, uncorroborated by any other evidence, does not justify a conviction. However, a free and voluntary confession of guilt by the accused is direct evidence of the highest character and is sufficient to authorize a conviction when corroborated by proof of the corpus delecti[, as here].") (footnote omitted). It follows that the evidence was sufficient to support Rowe's conviction beyond a reasonable doubt on this account.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 8, 2010.

*Brandon Lewis*, for appellant.
*Tracy G. Lawson, District Attorney, Billy J. Dixon, Assistant District Attorney*, for appellee.