S11G1082. BROWN v. THE STATE.
(725 SE2d 320)

NAHMIAS, Justice.

The issue presented is whether a criminal suspect who is told by police officers that he will be able to return home after questioning regardless of what he says has received a "hope of benefit" that

---

renders his subsequent confession inadmissible at trial under OCGA § 24-3-50. We hold that the answer is no, as long as the officers' statements do not amount to a promise that the suspect will never be charged or will face reduced charges or a reduced sentence based on what he tells the officers during the interview. In this case, Appellant Harrison Brown could not reasonably have construed the officers' statements as such a promise. Accordingly, we affirm the Court of Appeals' judgment reversing the trial court's order that excluded his confession. *State v. Brown*, 308 Ga. App. 480 (708 SE2d 63) (2011).

1. Appellant, who was then 19, was suspected of sexually molesting a four-year-old child who lived in his home based on the child's statement to his grandmother that Appellant "had sucked on his wee-wee and made it bigger." Appellant voluntarily went to the Effingham County Sheriff's Office for questioning and was told about the allegation against him. After meeting briefly with an investigator and a representative of the Division of Family and Children Services, Appellant was interviewed by two officers for approximately an hour and 20 minutes. The interview was audio and video recorded. It took place in a noncustodial setting. Appellant was not handcuffed, and he was seated next to the interview room door, which was left unlocked. He was informed at the outset that he could leave anytime he wished and that he was not under arrest. Appellant responded, "Yeah, I know," and he told the officers that he had taken criminal justice classes. Appellant denied ever touching the child inappropriately.

A few minutes into the interview, Appellant asked the officers what the consequences would be if he did touch the child as alleged. One officer replied, "I'm not gonna sit here and tell you what a judge is going to do. . . . I can't tell you what the penalties are because I'm not the judge. And I'm not even going to go out on that limb." The other officer then said, "I mean, we can't sit here and promise you anything or tell you anything. . . . What I can tell you is that when you leave here, no matter what you tell me or say, you're going home." The officer continued, "If you tell me it happened, I'm not going to snatch you up, place you in handcuffs and drag you back there in the back. . . . You're going to go home tonight." The other officer interrupted with the qualification, "Unless you killed somebody. Now if you . . . killed somebody, you ain't going home."

Over the next half hour, the officers tried several different tactics to convince Appellant to admit the molestation, including telling him how much better he would feel if he would "come clean" about what he did, assuring him that they believed that he was a "good person" who simply had made a mistake and was suffering from urges that he could not consciously control, and warning of the risk to other children in the future if Appellant failed to get help now

by admitting what he had done. Appellant, however, continued to deny the child's allegation, although he acknowledged that if the allegation were proven true, "I know there will be consequences. . . . I know that."

About 40 minutes into the interview, as the officers were appealing to Appellant's conscience, urging him to tell them what happened so they could get help for the child, Appellant, who had become emotional, confessed that on one occasion he had touched the child's penis and placed it in his mouth. This exchange immediately followed:

> OFFICER: Right now, you know that I can't let you get up and walk out of here right now with what you just told me. You know that, don't you?
> APPELLANT: Yeah. And I know that I'm screwed.

The officer then added, "You know, I think we have come to understand, with what you've just told me, that you're not going to be able to leave right now, right?" Appellant replied, "Right."

Because Appellant was in custody at that point, an officer read him the *Miranda* warnings. See *Miranda v. Arizona*, 384 U. S. 436, 444 (86 SC 1602, 16 LE2d 694) (1966). Appellant indicated that he already knew his rights, but the officer nevertheless spent a considerable amount of time ensuring that Appellant understood his *Miranda* rights and was willing to waive them by continuing the interview. During this discussion, Appellant said several times that he understood that he would be going to jail, and the officer said that he could not say whether Appellant would get a bond or what Appellant's sentence would be because he was not the judge. Appellant ultimately signed a written waiver of his *Miranda* rights. In response to further questioning, Appellant repeated his incriminating admission. At the end of the interview, Appellant was kept in custody. He made a similar confession in an interview with another officer the next day.

Appellant was later indicted for aggravated sodomy, aggravated child molestation, child molestation, and felony sexual battery. He moved to suppress his confession under OCGA § 24-3-50, which says, with emphasis added, "To make a confession admissible, it must have been made voluntarily, without being induced by another by the *slightest hope of benefit* or remotest fear of injury." The trial court granted the suppression motion, and the State appealed. See OCGA § 5-7-1 (a) (4) (authorizing an appeal by the State "[f]rom an order . . . suppressing or excluding evidence illegally seized"); *State v. Ritter*, 268 Ga. 108, 108, n. 1 (485 SE2d 492) (1997) (construing OCGA § 5-7-1 (a) (4) to apply to an order suppressing a defendant's

statements to the police). The Court of Appeals reversed. See *Brown*, 308 Ga. App. at 481. We granted certiorari to consider the following question: "Do officers' statements that a suspect can return home regardless of what he says during an interrogation constitute a hope of benefit under OCGA § 24-3-50?"

2. (a) There is no dispute about what took place during the police interview in question, since it was recorded with both video and audio. The recording is part of the record on appeal, and the parties point to no evidence beyond the recorded interview to support their arguments regarding the admissibility of Appellant's confession. Consequently, like the Court of Appeals, we review de novo the trial court's determinations of both fact and law. See *Brown*, 308 Ga. App. at 482. Accord *Clay v. State*, 290 Ga. 822, 825, n. 1 (725 SE2d 260) (2012) ("This Court owes no deference to a trial court's factual findings gleaned from a review of a videotape that are not the subject of testimony requiring the trial court's weighing of credibility or resolving of conflicts in the evidence."); *Green v. State*, 275 Ga. 569, 573 & n. 11 (570 SE2d 207) (2002).

(b) A promise to a suspect that he can go home after police questioning may fall within the colloquial understanding of the phrase "slightest hope of benefit" used in OCGA § 24-3-50. However, words often gain meaning from context, including here the Code section that immediately follows, OCGA § 24-3-51, which says that a promise of a "collateral benefit" does not render a confession inadmissible. Read in tandem, OCGA §§ 24-3-50 and 24-3-51 provide as follows:

> To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury. The fact that a confession has been made under a spiritual exhortation, a promise of secrecy, or a promise of collateral benefit shall not exclude it.[1]

This context makes it clear that OCGA § 24-3-50 does not encompass every conceivable benefit that the police may offer a suspect in an effort to induce him to confess. Indeed, this Court consistently and for many decades has interpreted the phrase "slightest hope of benefit" as used in OCGA § 24-3-50 and its predecessor code sections to focus on promises related to reduced

---

[1] These two provisions have appeared together since Georgia's first code, see Code of 1863, §§ 3716–3717, and they are carried forward without any substantive change in the new Georgia evidence code that will take effect on January 1, 2013. See OCGA §§ 24-8-824 and 24-8-825.

criminal punishment — a shorter sentence, lesser charges, or no charges at all. See, e.g., *Turner v. State*, 203 Ga. 770, 771 (48 SE2d 522) (1948) (holding that OCGA § 24-3-50's predecessor "require[s] the exclusion from evidence of any confession that is induced by another by the slightest hope that the confession would make his punishment lighter"); *White v. State*, 266 Ga. 134, 135 (465 SE2d 277) (1996) ("The promise of a benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect."); *Foster v. State*, 283 Ga. 484, 485-486 (660 SE2d 521) (2008) (explaining that, in addition to "a hope of benefit in the form of lesser punishment," "the 'reward' of facing no charges . . . is an impermissible hope of benefit" under OCGA § 24-3-50).

A promise not relating to charges or sentences, including a promise regarding release after questioning, has been held to constitute only a "collateral benefit," as that phrase is used in OCGA § 24-3-51, and even if it induces a confession, it does not require the automatic exclusion of that evidence. See *In the Interest of D. T.*, 294 Ga. App. 486, 489 (669 SE2d 471) (2008) (holding that an officer's promise to a juvenile suspect that he would "drive [him] home" once he gave a statement, "even if this could be construed as the promise of a benefit for D. T.'s confession, was only a collateral benefit that would not implicate the provisions of OCGA § 24-3-50"); *Smith v. State*, 269 Ga. App. 133, 140 (603 SE2d 445) (2004) (holding that OCGA § 24-3-50 did not require exclusion where the defendant told an officer that he just wanted to go home, and the officer replied, "let's straighten this out and we'll see about getting you home," because the officer did not offer the hope of lighter or no charges or a shorter sentence in return for the defendant's confession). See also *Brown v. State*, 278 Ga. 724, 728 (609 SE2d 312) (2004) (rejecting exclusion of a confession under OCGA § 24-3-50 where the officer "periodically stated that [the defendant] would soon be released, while questioning continued"). Consequently, even if Appellant's confession was induced by his hope that the officers would, as promised, let him go home after the interview, it was not per se inadmissible under OCGA § 24-3-50.[2]

(c) Nor do we believe that Appellant could have reasonably understood the officers' promises to have a greater import. Having

___

[2] Appellant relies heavily on *Richardson v. State*, 265 Ga. App. 711 (595 SE2d 565) (2004). To the extent *Richardson* holds that promising a suspect that if he confesses, he will be rewarded with "no charges at all," id. at 716, it is consistent with our opinion today. However, to the extent *Richardson* could be read to hold that OCGA § 24-3-50 requires suppression of a confession whenever an officer tells a suspect that a decision on whether to arrest and charge him will depend on what he tells the officer, it is hereby disapproved.

reviewed the recording of the interview, we agree with the Court of Appeals that Appellant "could not have reasonably understood the investigators' statements to mean that he would *never* be charged or arrested for his crimes." *Brown*, 308 Ga. App. at 485 (emphasis in original). The officers never said or implied to Appellant that if he confessed what he had done to the child, no criminal charges would ever be filed against him, nor did they promise him reduced punishment. To the contrary, there were several references to potential criminal sanctions, and Appellant acknowledged that there should be criminal consequences if he had in fact molested the child. Moreover, when Appellant asked what would happen to him if the allegation against him was true, one officer responded, "I can't tell you what the penalties are because I'm not the judge," and the other officer added, "we can't sit here and promise you anything or tell you anything."

Thus, the officers' statements to Appellant that he would go home after the interview no matter what he told them (short of confessing to killing someone) clearly referred to what would supposedly happen to him after the interview that day, not what might happen to Appellant later on; they therefore offered at most a collateral benefit. Indeed, as noted above, after Appellant finally confessed — half an hour after the officers' statements about going home, and after numerous intervening denials of misconduct and other police exhortations to tell the truth, the legality of which Appellant has not challenged — Appellant was immediately advised that he would not be allowed to leave. Rather than protest that he had been promised otherwise, Appellant repeatedly acknowledged that he was "screwed," had further discussion about going to jail and the officers' inability to make promises as to his bond or ultimate sentence, and waived his *Miranda* rights and continued to make incriminating statements.

Thus, the police officers in this case did not induce Appellant's confession with a "hope of benefit" within the meaning of OCGA § 24-3-50, and the Court of Appeals therefore correctly reversed the trial court's order excluding his statements.

(d) We add a cautionary note, however. It may be a salutary practice for law enforcement officers in appropriate cases to let suspects leave an interview even after they provide somewhat incriminating statements, where that allows the officers to consider the suspect's story along with other evidence gathered in the investigation before making a charging decision. However, officers make promises about their intention to arrest or release suspects after questioning — particularly false promises — with some peril. As we have held today, a police officer's promise to let a suspect leave after questioning does not, without more, constitute a "hope of

benefit" related to potential punishment that may render the suspect's subsequent confession involuntary and inadmissible under OCGA § 24-3-50. But such a promise, particularly if it is broken, could be one of the totality of circumstances that renders a confession involuntary and inadmissible as a violation of constitutional due process. See *Watkins v. State*, 289 Ga. 359, 363 (711 SE2d 655) (2011). In this case, however, the totality of circumstances does not suggest a constitutionally involuntary confession, and Appellant has not raised any constitutional challenge, relying solely on the Georgia statute.

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., Carley, P. J., Hines and Melton, JJ., who concur in Divisions 1, 2 (a), (b), and (c), and the judgment.*

DECIDED APRIL 24, 2012.

*Jackson & Schiavone, George T. Jackson, Steven L. Sparger,* for appellant.

*Richard A. Mallard, District Attorney, Brian A. Deal, Assistant District Attorney,* for appellee.