## A04A1264. GETKATE v. THE STATE.
### (604 SE2d 611)

PHIPPS, Judge.

After a stipulated bench trial, Arend Hendrick Getkate was convicted of three counts of aggravated child molestation and one count of child molestation. He appeals, claiming that the trial court erroneously admitted his confession as evidence at trial. For reasons that follow, we affirm.

On August 16, 2002, Detective Thomas Stott of the Henry County Police Department began investigating allegations that Getkate had sexually molested J. S., a child under the age of 16 years. Stott interviewed J. S. and, based on that interview, obtained an arrest warrant charging Getkate with aggravated child molestation. At the time Stott obtained the warrant, Getkate was out of the country. When Getkate returned, Stott went to Getkate's father's residence and spoke to Getkate and his mother. Stott told them that he was there to investigate sexual abuse allegations, that he wanted to hear Getkate's side of the story, and asked if Getkate would cooperate and come to the police station. Getkate agreed to cooperate and rode with Stott in an unmarked car to the police station. He was not handcuffed during the trip. Stott testified that he did not place Getkate under arrest at the time or inform him of the warrant because Getkate had agreed to cooperate.

Stott and Detective Smith conducted a videotaped interview of Getkate at the police station. Stott informed Getkate that J. S. and his parents had made certain allegations which prompted them to want to talk to Getkate. He then informed Getkate of his *Miranda*[1] rights and had him read and sign a form indicating that he had been advised of and understood those rights. Getkate was 20 years old at the time of the interview and was a sophomore in college.

During the interview, Getkate described his sexual activity with J. S. Getkate admitted to all of the acts with J. S. described in the indictment. He then asked the officers if they were trying to get him to admit everything "to hang himself." Stott told him that, based on the information they had gathered from J. S. and from Getkate, they knew that something that should not have occurred had occurred. Stott explained that they wanted to know the truth and that if in fact all of the acts with J. S. were consensual, that is what they wanted to hear.

When Stott asked him if there had been any "situations" with any other children living in his father's house, Getkate admitted to one

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

encounter with T. S., a child under the age of 16 years. Getkate said that T. S. had told him to rub her breasts, and that he had done so.

Getkate then asked what kind of penalties he was facing. Stott told him the charges were aggravated child molestation, which he said carried a maximum penalty of 20 years. When Stott left the room, Smith told Getkate that his sentence could be anywhere from one to twenty years and that they were interested in finding out whether the sexual activity was mutually agreed upon or if one person initiated it. When Stott returned, he informed Getkate that they were going to process the charges against him and he would be taken to jail. He then handcuffed Getkate.

Before trial, the court conducted a *Jackson-Denno*[2] hearing to determine whether Getkate's statement would be admissible. The trial court ruled the statement admissible. At the stipulated bench trial, the court found Getkate guilty of all charges and sentenced him to forty years, ten in confinement.

Getkate claims that the trial court erred by admitting his confession because the detectives tricked him into believing that his actions were not serious. He argues that the detectives led him to believe that he would be released after the interview to go to work and that they intimated that if the sexual contact with J. S. was consensual, it did not constitute a crime. He also points out that the detectives gave him inaccurate information about the sentence he would face for aggravated child molestation charges.

We review a trial court's findings relating to the admissibility of an incriminating statement under a clearly erroneous standard.[3] "To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."[4] "The promise of a benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect."[5] The "hope of benefit" referred to in OCGA § 24-3-50 is generally a reward of lighter punishment.[6]

Getkate complains that the detectives misled him into believing that any consensual sexual activity with J. S. would not constitute a crime. In fact, the detectives never said that a consensual act would not constitute a crime and told Getkate that they were interested in knowing if the acts were consensual only after he had confessed. Thus, the detectives' statements cannot be construed as offering a

---

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[3] *Daniel v. State*, 268 Ga. 9, 10 (2) (485 SE2d 734) (1997).

[4] OCGA § 24-3-50.

[5] *Evans v. State*, 248 Ga. App. 99, 101 (2) (545 SE2d 641) (2001).

[6] *Sparks v. State*, 232 Ga. App. 179, 184 (4) (501 SE2d 562) (1998).

reward of lighter punishment if Getkate confessed.[7]

And unlike *State v. Ritter*,[8] relied upon by Getkate, the detectives' statements did not constitute an implied promise that Getkate would not be charged with a crime or would be charged with a lesser crime if he gave a statement. In *Ritter*, the detective who interrogated Ritter told him that the victim was going to be okay and would likely only have a bad headache when, in fact, the detective knew the victim had died from his injuries. The detective testified that he was afraid if he told Ritter the truth, he would not talk to the police. Based on the detective's misrepresentations, Ritter confessed to what he thought was an aggravated assault charge. The court held that the detective's deception was intended and did induce Ritter to confess in the hope of receiving lighter punishment and that his confession would not have been made if he knew he faced a possible death sentence.[9] Here, the trial court correctly determined that *Ritter* is not factually similar to this case.

Getkate also claims that the detectives affirmatively misrepresented the range of punishment for aggravated child molestation. The detectives did give Getkate inaccurate information about the sentence he was facing for a charge of aggravated child molestation.[10] But that information was given after Getkate had already confessed to the crimes with which he was charged. As a result, the inaccurate information had no bearing on the confession and did not affect its voluntary nature.[11]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED SEPTEMBER 13, 2004 — ■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Sexton & Morris, Lee Sexton*, for appellant.
*Tommy K. Floyd, District Attorney, Sandra G. Rivers, Assistant District Attorney*, for appellee.

■■■■■■■■■

---

[7] See *Moore v. State*, 230 Ga. 839, 840 (1) (199 SE2d 243) (1973).

[8] 268 Ga. 108, 110 (1) (485 SE2d 492) (1997).

[9] Id. at 111.

[10] See OCGA § 16-6-4 (d) (1) (punishment is imprisonment for not less than ten nor more than thirty years).

[11] See *Chandler v. State*, 261 Ga. App. 639, 640 (1) (583 SE2d 494) (2003).