## S09G1465. CANTY v. THE STATE.
### (690 SE2d 609)

MELTON, Justice.

In *Canty v. State*, 297 Ga. App. 725 (678 SE2d 169) (2009), the Court of Appeals affirmed Alfonzo D. Canty's convictions for criminal attempt to commit armed robbery and aggravated assault. Among other things, the Court of Appeals determined that the trial court did not err by denying Canty's motion to suppress his confession as involuntary and induced by an improper hope of benefit. The record, however, shows that Canty incriminated himself only after being told that he might receive a "shorter term" by doing so. Accordingly, we reverse.

"In a ruling on a motion to suppress, a trial court's findings as to disputed facts will be reviewed under a clearly erroneous standard and . . . the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citation omitted.) *State v. Ray*, 272 Ga. 450 (2) (531 SE2d 705) (2000). The underlying crime for which Canty was tried in this case involved the attempted robbery of a Sonic Drive-In Restaurant. On the night of December 14, 2001, Tara Marquez was working as a carhop. While she was working outside, she noticed four males in the dim light, became apprehensive, and ran for the restaurant's rear entrance. The four men pursued, and one of them grabbed her shirt as she escaped into the

restaurant. Because of the poor lighting, Marquez could not identify her assailants.

On July 19, 2002, Canty was being held in the Bulloch County jail on unrelated charges involving robbery and damage to property, and he was called in for an interview regarding these charges by Detective Terry Briley.[1] Detective Katrina Marson also attended this interview, and, at one point, she asked Canty if he knew anything about the attempted robbery at the Sonic. Canty responded that he believed that the attempted robbery had been committed by Levi and Lenzie Wilkerson. He did not implicate himself. Marson testified that, at this point, she "was encouraging [Canty] that — from his demeanor that he was involved [with the Sonic attempted robbery], that was my thought. So I was encouraging him that if he's involved in this, since he already had pending charges, that we would put them all together."

At the motion to suppress hearing, Marson described her statements to Canty in the following way:

> Detective Briley and I explained to [Canty] that if he or any of the other parties that he'd mentioned were involved in any other things we'd like to put them . . . all in one basket so that we can . . . work in everything together so when the DA's office looks at that, they're aware of all the charges and then nothing will come up and sneak up behind him later and be charged with something else. So that maybe everything can be worked out altogether rather than as separate incidences. . . . The only thing I indicated to him was that I could speak with the DA's office about keeping all the cases in one and hope that when he went to court that he could have them all adjudicated together rather than as separate incidences . . . [a]nd hope for a shorter term. . . . I advised him that if we could put every — if he was involved in any other incidences, that we could put everything together and that the DA's office could work it altogether as one charge rather than putting them as separate charges, which is what I referred to as the shorter time, rather than each — each incident being separated. . . . I probably mentioned that we could speak to the DA's office and probably put it all together so that he wouldn't have to do each charge separately and that it would be — you know, he could run it — I wasn't sure he would understand what concur-

---

[1] There is no contention that Canty was not properly *Mirandized* for purposes of this interview.

610

rent or consecutive would mean. So I kind of broke it down in that . . . regard.

Later, during trial, Marson confirmed that she gave Canty this information "[i]n reference to putting things together for the DA's office in hopes of a shorter sentence if they were all put together." Canty implicated himself in the Sonic attempted robbery only after receiving this "encouragement" from Marson.

Based on these facts, Canty's confession must be considered involuntary and inadmissible.

> Under Georgia law, only voluntary incriminating statements are admissible against the accused at trial, and the State has the burden of proving the voluntariness of a confession by a preponderance of the evidence. *State v. Ritter*, 268 Ga. 108 (1) (485 SE2d 492) (1997). OCGA § 24-3-50 requires that an admissible confession "must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." "The promise of a hope or benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect." *White v. State*, 266 Ga. 134 (3) (465 SE2d 277) (1996). Generally, the "hope of benefit" to which the statute refers has been construed as a hope of lighter punishment. *Preston v. State*, 282 Ga. 210 (2) (647 SE2d 260) (2007) (in the absence of an explicit promise of a lighter sentence, officer's discussion of the death penalty and life without parole was not a hope of benefit but an explanation of the seriousness of the defendant's situation); *Brown v. State*, 278 Ga. 724 (3) (609 SE2d 312) (2004) (no evidence of hope of benefit in the absence of evidence a detective led defendant to believe he would receive a lighter sentence or immediate freedom if he confessed); *Evans v. State*, 277 Ga. 51, 53 (586 SE2d 326) (2003) (no evidence of hope of benefit in the absence of evidence an officer referred to any possibility of a lighter sentence when questioning defendant).

*Foster v. State*, 283 Ga. 484, 485-486 (2) (660 SE2d 521) (2008). In this case, it is evident from the record that Canty was told much more than simply that his cooperation would be made known to the prosecution. He was told that confessing to the crime could result in a "shorter term." This is exactly the hope of benefit which is prohibited under Georgia law. As a result, Canty's confession was induced by a hope of benefit, must be "presumed to be legally false[,]

and cannot be the underlying basis of a conviction." (Citation omitted.) *State v. Ritter*, supra, 268 Ga. at 109 (1). See also *Turner v. State*, 203 Ga. 770 (2) (48 SE2d 522) (1948) (confession inadmissible after defendant told it would be "lighter on him" if he told the truth).

*Judgment reversed. All the Justices concur.*

DECIDED MARCH 1, 2010.

*Robert L. Persse*, for appellant.
*Richard A. Mallard, District Attorney, W. Scott Brannen, Assistant District Attorney*, for appellee.