**SECOND DIVISION
MILLER, P. J.,
DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 28, 2018**

# In the Court of Appeals of Georgia

A17A1204. JONES v. THE STATE.                    DO-041 C

DOYLE, Presiding Judge.

Following a jury trial, Arthur Jones was convicted of burglary[1] and armed robbery[2] and acquitted on a count of possessing a firearm during the commission of a felony.[3] He appeals from the partial denial of his motion for new trial,[4] contending that (1) the trial court erred by admitting inculpatory statements he made during a police interview because they were not voluntary, (2) he received ineffective assistance of counsel, and (3) the trial court failed to re-sentence him following his

---

[1] OCGA § 16-7-1 (b).

[2] OCGA § 16-8-41 (a).

[3] OCGA § 16-11-106 (b) (1).

[4] Part of his motion was granted on the ground that two counts of burglary merged.

successful merger argument at the motion for new trial. In light of the promises made by the interviewing detective creating a hope that Jones would not be charged if he confessed, we agree and reverse.

The record shows that police received information that Jones, a 14-year-old boy, was involved in a burglary at Mycreatisha Davis's apartment. Detectives went to Jones's residence to discuss the alleged burglary and asked his mother if they could speak to Jones. His mother agreed and allowed the detectives to go to Jones's upstairs bedroom to speak to him. A detective explained to Jones that they were there to talk about some recent burglaries, and Jones handed her some videos that had been stolen from Davis. The detective also observed in plain view two cell phones and asked the mother about them; Jones's mother told the detective she did not know where one of them came from. At that point, the detectives determined that Jones would be charged with the burglary, and they handcuffed Jones and told him and his mother that they would be bringing him downtown for further questioning. Police told the mother she could come to the police station, and the mother replied that she would meet them there shortly after "tak[ing] care of a few things."

The mother arrived in the police station lobby five or ten minutes after police had arrived with Jones, and police explained that they were interviewing Jones and

he was going to be charged with burglary. The mother did not ask to be present, and police did not inform her that she could be present.

During the ensuing interview, which lasted approximately 30 minutes, Jones was *Mirandized*[5] and admitted being the lookout in the Davis burglary and another burglary in Alabama. The detective asked Jones about other burglaries in the same apartment complex, but he denied involvement in any other burglaries. Jones was then released to his mother.

After police obtained additional information linking Jones to the crimes in this case - an armed robbery and burglary in Stephanie Taylor's apartment while her two young children were with a babysitter - they went back to Jones's residence to speak with him again. Jones's mother was not home, so police called her at work, and she gave them permission to talk to Jones.

During the second interview, Jones initially denied involvement in the Taylor armed robbery and burglary, but the interviewing detective pressed him because she

---

[5] Jones was administered a juvenile advice of rights warning that contained a simplified version of the *Miranda* warning. See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

believed he was lying based on allegations from other witnesses. Jones again admitted involvement in the Davis burglary, but remained evasive about other burglaries in the area. The interview escalated, and the detective became audibly frustrated, lecturing Jones:

> Let me explain something to you, ok? You've already dug yourself a hole. . . So when I go to the judge Tuesday, I'm going tell him how you lied, and how you don't want to help yourself out because you keep lying. You understand? Did I not tell you that if I found something out, I was going to come back and charge you? What happened? . . . . [D]o you want to be charged with the other [burglaries in the complex]? . . . What do you think you need to be doing right now?
>
> Jones: I need to be talking.
>
> Detective: Ok. And doing what else?
>
> Jones: And telling the truth.
>
> Detective: Then why didn't you do it the first time I came to you?
>
> Jones: Because I was nervous.
>
> Detective: You were nervous? *Didn't I promise you I wasn't going to do anything? Am I not making that promise to you again? . . . I don't care about any other detectives, ok? I'm sitting here telling you, if you don't*

*sit here and tell me the truth, you are going to make me charge you again, do you understand me?* . . . If I find out you are lying to me, I'm going to charge you. . . . Do you want to spend the next three years in jail? . . . Don't sit here and play me because you don't want to play this game I can play. Because I just got a boy 18 months just on two charges. Do you understand what I'm telling you? I'll get you to become a designated felon real quick. . . . *So your best bet is to sit here and tell me everything that you've been involved in, we're going to sit down and determine what you're going to get charged with and what you're not going to get charged with, and we're gonna take it from there.* And yes, you will go to [the youth detention center] tonight if I have my say in it.[6]

Within one minute after this exchange, Jones admitted his involvement in the burglary and armed robbery at issue in this case, despite having already denied it earlier in this interview and in the prior interview.

Jones was indicted for armed robbery, burglary, and possession of a firearm during the commission of a felony.[7] Jones moved to suppress his statements to police,

---

[6] (Emphasis suppled.)

[7] See generally OCGA § 15-11-560 (b) ("The superior court [and not the juvenile court] shall have exclusive original jurisdiction over the trial of any child 13 to 17 years of age who is alleged to have committed . . . [a]rmed robbery if committed with a firearm. . . .").

and following a *Jackson-Denno*[8] hearing, the trial court ruled that his statements were voluntary. At trial, after hearing the evidence, including redacted recordings of the interviews, the jury returned a guilty verdict on all counts except for the firearm charge, and the court sentenced Jones to 15 years with 10 to serve in prison.[9] Jones moved for a new trial, challenging his sentence on merger grounds, the admissibility of the confession, and the efficacy of his trial counsel, and the trial court granted the motion as to merger and otherwise denied the motion. Jones now appeals.

1. Jones contends that the trial court erred by admitting his incriminating statements to police because they were induced by the hope of a lighter punishment.[10] Based on the record before us, we agree.

---

[8] 378 U. S. 368 (84 SCt 1774, 12 LEd2d 908) (1963).

[9] This was Jones's second trial because the first resulted in a mistrial due to improper evidence being presented to the jury.

[10] Because Jones's trial occurred before January 1, 2013, the old evidence Code applies. See Ga. L. 2011, p. 99, § 101.

"Under Georgia law, only voluntary incriminating statements are admissible against the accused at trial, and the State has the burden of proving the voluntariness of a confession by a preponderance of the evidence."[11]

> In determining whether a juvenile has given a statement voluntarily, a court considers nine factors set forth in *Riley v. State*:[12] (1) the age of the accused; (2) the education of the accused; (3) the knowledge of the accused as to the substance of the charge and nature of his rights to consult with an attorney; (4) whether the accused was held incommunicado or allowed to consult with relatives or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) the methods used in interrogation; (7) the length of the interrogation; (8) whether the accused refused to give voluntary statements on prior occasions; (9) and whether the accused repudiated the extrajudicial statement at a later date.[13]

Here, Jones was fourteen years old and in the ninth grade at the time of the interviews. Although police asked his mother for permission to interview him, she was not present during the interviews, nor was any other family member or an

---

[11] (Punctuation omitted.) *Canty v. State*, 286 Ga. 608, 610 (690 SE2d 609) (2010).

[12] 237 Ga. 124 (226 SE2d 922) (1976).

[13] *Oubre v. Woldemichael*, 301 Ga. 299, 305 (2) (a) (800 SE2d 518) (2017).

attorney. Jones was aware that he was going to be charged for the Davis burglary and that police wanted to know about any other burglaries he was involved in, but no formal charges had been filed. He had been handcuffed for his transportation to the police station, but the interview was conducted in an informal, cubicle setting.

Most notable here was the method used during the interrogation, a *Riley* factor.

Former OCGA § 24-3-50, now the nearly-identical OCGA § 24-8-824, provided at the time of [Jones's trial] that "to make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury. . . . *It has long been understood that "slightest hope of benefit" refers to promises related to reduced criminal punishment — a shorter sentence, lesser charges, or no charges at all.*[14]

In the second interview, as noted above, the tone of the interview escalated as the detective grew frustrated with Jones's denials of involvement in any burglaries besides the Davis burglary. The detective shifted from asking questions to exhorting Jones to tell the truth about those burglaries, explicitly threatening Jones that he

---

[14] (Punctuation omitted.) *Oubre*, 301 Ga. at 306 (2) (a). "The new Evidence Code carried forward former OCGA § 24-3-50, as the new OCGA § 24-8-824. The sole change in the statute is that the new provision replaces 'must' with 'shall' in the former phrase, '[t]o make a confession, it must have been made voluntarily[.]'" Id. at 305 n.6.

would be charged with the other burglaries if he did not tell the truth, and promising him not "to do anything" if he did tell the truth:

> Did I not tell you that if I found something out [after the first interview], I was going to come back and charge you? What happened? [Jones: You came back.] Alright, do you want to be charged with the other ones? . . . Didn't I promise you I wasn't going to do anything [after the first interview]? Am I not making that promise to you again?"

In light of this explicit promise not to charge Jones with the other crimes under investigation (including the ones at issue) and his immediate confession thereafter, the trial court erred by concluding that Jones gave this confession "without being induced by another by the slightest hope of benefit."[15] Such a promise is "much more than simply [saying] that his cooperation would be made known to the prosecution [or judge]. He was told that confessing to the crime [w]ould result in [not being charged at all.] This is exactly the hope of benefit which is prohibited under Georgia

---

[15] See *Oubre*, 301 Ga. at 306 (2) (a). See also *Canty*, 286 Ga. at 610-611 (reversing a conviction on the ground that the defendant confessed only after he was offered a "shorter term" in exchange for his confession); *Turner v. State*, 203 Ga. 770, 771 (2) (48 SE2d 522) (1948) (confession inadmissible after defendant told it would be "lighter on him" if he told the truth); *State v. Robinson*, 326 Ga. App. 63-66 (755 SE2d 869) (2014) (no error in trial court's exclusion of statements defendant made to police upon being told "[t]he person that cooperates is the person that gets help").

law."[16] Therefore, Jones's confession was involuntary under the totality of the circumstances, it should have been suppressed at the *Jackson-Denno* hearing, and the trial court erred by denying Jones's motion for new trial.

2. Jones's remaining enumerations are moot.

*Judgment reversed. Miller, P. J., and Reese, J., concur.*

---

[16] *Canty*, 286 Ga. at 610.